**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Ryan B. MOORMAN, Respondent.**

No. 04–0156.

Supreme Court of Iowa.

June 16, 2004.

Norman G. Bastemeyer and Mark J. Schouten, Des Moines, for complainant.

Ryan B. Moorman, Des Moines, pro se.

CADY, Justice.

The Iowa Supreme Court Board of Professional Ethics and Conduct charged Ryan B. Moorman with numerous violations of the Iowa Code of Professional Responsibility for Lawyers mainly stemming from his neglect of client matters in multiple cases. The Grievance Commission of the Supreme Court of Iowa found that Moorman violated the Code of Professional Responsibility. It recommended Moorman be suspended from the practice of law for a period of not less than six months. On our review, we find Moorman violated the Code of Professional Responsibility and impose an indefinite suspension of not less than two years.

## I. Background Facts and Proceedings.

Ryan B. Moorman is an Iowa lawyer. His background as a lawyer is largely unknown to us because he never responded to the Board's complaint, and did not appear at the hearing on the complaint before the Grievance Commission. However, witnesses familiar with his conduct as a lawyer did appear and provided testimony about numerous incidents of client neglect and other acts in violation of the Code of Professional Responsibility.

A former client testified that Moorman failed to file a petition on her behalf in a personal injury claim arising out of a motor vehicle accident within the statute of limitations period. Moorman agreed to represent the client, entered into a contingent fee contract, and simply failed to take action to file the petition. After acknowledging his mistake, Moorman promised to pay the client $20,000, an amount he believed the client would have received if the case would have been pursued, less his contingent fee. Moorman told the client, however, that she must not disclose their

settlement arrangement. Moorman also failed to counsel the client to seek independent legal advice before entering into the agreement. The settlement was to be paid in monthly installments of $500.

Moorman made only a few sporadic payments to the client. He also promised a physician that he would pay the costs of an operation the client needed for the injury she received from the motor vehicle accident. Although the surgeon performed the operation, Moorman failed to pay as promised. Additionally, Moorman offered to misrepresent the date of the client's injury to an insurance company in an effort to obtain medical coverage for the client under an employer-provided insurance policy.

As a result of mounting medical bills and sporadic employment, the client was forced to file for bankruptcy. The client then brought a claim against Moorman for professional malpractice. Moorman did not carry professional liability insurance, and the claim resulted in a $20,000 settlement.

There was additional testimony at the Grievance Commission hearing from the deputy clerk of the supreme court concerning Moorman's neglect in five separate criminal and juvenile cases on appeal. In all five cases, Moorman failed to properly prosecute the appeals, resulting in a dismissal of each case. In one instance, the appeal was subsequently reinstated. In another case, Moorman filed an application following the dismissal for want of prosecution that contained contradictory and dubious information. He claimed his client never received notice of the court decision and sought permission to file a delayed appeal. We issued an order requesting Moorman to submit an affidavit to support his claim, but no response was filed.

Moorman was described as the worst violator of the time requirements of the rules of appellate practice in the state. He accumulated nearly $900 of unpaid default fines in various appeals since 2000.

## II. Board Complaint.

The Board charged Moorman with numerous violations of the Code of Professional Responsibility, including DR 6–101(A)(3) (neglect of a client's legal matter), DR 1–102(A)(6) (conduct adversely reflecting on the fitness to practice law), DR 7–101(A)(2) (failure to perform a contract of employment), and DR 1–102(A)(4) (conduct involving misrepresentation).

The commission found the Board established the violations as set forth in the complaint, with two exceptions. It found the evidence of neglect was insufficient in one of the five appellate cases because Moorman ultimately succeeded in obtaining a reinstatement of the case. The commission also made no finding that Moorman engaged in misrepresentation. The commission recommended Moorman be suspended from the practice of law for a period of not less than six months.

## III. Scope of Review.

"We review attorney disciplinary proceedings de novo." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bernard,* 653 N.W.2d 373, 375 (Iowa 2002). "We are not bound by the findings of the Commission, but we give them weight." *Id.*

## IV. Violations.

Neglect is not defined by our rules of ethics, but it has generally been recognized to involve indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client. *Comm. on Prof'l Ethics & Conduct v. Rogers,* 313 N.W.2d 535, 536 (Iowa 1981). Neglect is more than ordinary negligence and usually involves multi-

ple acts or omissions. *Id.* It is a form of professional incompetence that often involves procrastination, such as a lawyer doing little or nothing to advance the interests of a client after agreeing to represent the client. *See* Charles W. Wolfram, *Modern Legal Ethics* § 5.1, at 191–92 (1986); *Comm. on Prof'l Ethics & Conduct v. Nadler,* 467 N.W.2d 250, 253 (Iowa 1991) ("incompetence is grounds for disciplinary action"). *See generally* Debra T. Landis, Annotation, *Negligence, Inattention, or Professional Incompetence of Attorney in Handling Client's Affairs in Personal Injury or Property Damage Actions as Ground for Disciplinary Action—Modern Cases,* 68 A.L.R.4th 694 (1989) (collecting and discussing cases providing examples of attorney incompetence).

■ An attorney who fails to file a claim on behalf of a client within the statute of limitations period is not necessarily subject to a professional disciplinary action. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Adams,* 623 N.W.2d 815, 819 (Iowa 2001) (no neglect if omission was inadvertent or error in judgment). Evidence in this case, however, revealed Moorman's omission in failing to file the client's claim within the statutory period of limitations was more than mere negligence. The client was actively engaged in pursuing her claim, and Moorman repeatedly informed the client that the petition would be filed. The driver of the other vehicle was covered by insurance with substantial limits. The client repeatedly attempted to contact Moorman by telephone during the weeks preceding the date the statute of limitations expired, but was told that Moorman was unavailable. Moorman failed to act to protect the client's interests at a critical time when action was required and could not be delayed any longer. His conduct showed a total indifference constituting a conscious disregard for the client. It involved multiple acts and amounted to procrastination.

Under all the circumstances presented, we conclude Moorman neglected client matters by failing to timely file the petition on behalf of the client, in violation of DR 6–101(A)(3). *See Nadler,* 467 N.W.2d at 251–53 (failing to file lawsuit within the statute of limitations constitutes neglect). The neglect also violated DR 7–101(A)(2), prohibiting a lawyer from intentionally failing to carry out a contract for employment. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sherman,* 619 N.W.2d 407, 409 (Iowa 2000). Additionally, the neglect amounted to conduct prejudicial to the administration of justice and adversely reflected on Moorman's fitness to practice law. *See Bernard,* 653 N.W.2d at 375.

Moorman also neglected client matters in each of the five appellate cases that were dismissed for failure to prosecute. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett,* 653 N.W.2d 377, 380 (Iowa 2002) (failure to comply with appellate deadlines regarding client's appeal constitutes neglect); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Herrera,* 626 N.W.2d 107, 112 (Iowa 2001) (ignoring deadlines on appeal constitutes neglect). Moorman failed to comply with the rules of appellate procedure, as well as the subsequent notices to cure the defaults issued by the clerk of court. This conduct revealed a blatant pattern of neglect and constituted a conscious disregard for the responsibilities an appellate lawyer owes a client and the court. Moreover, neglect occurred in each case, even though one of the cases was ultimately reinstated. The neglect took place in the reinstated case when Moorman ignored the default notice, resulting in the dismissal of the case. The subsequent reinstatement did not cure the prior neglect and was not a remedy that served to maintain the high standards of

the profession. *See id.* (prejudice is not an essential component of neglect).

■ The record was insufficient to support a finding of misrepresentation as alleged by the Board based on Moorman's filing of the application for a delayed appeal. Misrepresentation generally requires an intent to deceive. *See Hyler v. Garner,* 548 N.W.2d 864, 871 (Iowa 1996). Negligent misrepresentation does not violate DR 1–102(A)(4). *Comm. on Prof'l Ethics & Conduct v. Bitter,* 279 N.W.2d 521, 526 (Iowa 1979). The application filed by Moorman was questionable—even odd—but alone did not support intent to deceive.

We observe that the Board did not charge Moorman with a violation of DR 1–102(A)(4) regarding his offer to misrepresent the date and nature of his client's claim to an insurance company. The Board also did not charge Moorman with conflict of interest, or limiting liability to a client, based on his conduct in settling the potential legal malpractice complaint with his client. *See Nadler,* 467 N.W.2d at 251–53 (attempting to limit liability by offering money to a client after allowing the statute of limitations to run on the client's claim violated DR 6–102(A)). Nevertheless, this conduct, as alleged by the Board, adversely reflected on Moorman's fitness to practice law. *See* DR 1–102(A)(6). The conduct engaged in by Moorman was improper and was committed in a desperate effort to diminish the impact of his neglect. It was the antithesis of the high standards of our profession and revealed an inclination to subvert the interests of a client.

## V. Discipline.

■ When neglect of client matters is the principal violation in an attorney disciplinary case, the resulting discipline normally " 'ranges from a public reprimand to a six-month suspension.' " *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold,* 642 N.W.2d 288, 294 (Iowa 2002) (citation omitted). However, precedents in such cases are of little value, and each case must be individually considered. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Eich,* 652 N.W.2d 216, 219 (Iowa 2002). Additionally, multiple incidents of neglect become aggravating circumstances to consider in determining discipline. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Pracht,* 656 N.W.2d 123, 126 (Iowa 2003). Neglect resulting in harm supports more serious discipline. *See Adams,* 623 N.W.2d at 819. Ultimately, we consider " ' "the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the [bar] as a whole, and the respondent's fitness to continue" ' " to engage in the practice of law. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel,* 634 N.W.2d 652, 655 (Iowa 2001) (citation omitted).

■ Considering all the relevant facts and circumstances, we conclude Moorman should be indefinitely suspended from the practice of law with no possibility of reinstatement for two years. In a recent similar case involving numerous incidents of profuse and pervasive neglect, we imposed a one-year suspension. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sullins,* 613 N.W.2d 656, 656–57 (Iowa 2000). Moorman, however, has not only established a reputation as an attorney who frequently ignores time lines, he has inflicted great harm on a client as a result of his neglect in his office practice. He also repeatedly engaged in conduct during the course of his client relationships that adversely reflected on his fitness to practice law. His clandestine attempt to limit his personal liability to his client and his offer to engage in fraudulent conduct support additional punishment. Finally, Moor-

man's failure to respond to the proceedings and to cooperate with the Board reflects adversely on his general fitness to practice law and is an additional factor in imposing discipline. *See Comm. on Prof'l Ethics & Conduct v. Horn,* 379 N.W.2d 6, 8–9 (Iowa 1985).

## VI. Conclusion.

We suspend Moorman's license to practice law with no possibility of reinstatement for a period of not less than two years from the date of the filing of this opinion. The suspension applies to all facets of the practice of law. Iowa Ct. R. 35.12(3). Upon application for reinstatement Moorman shall have the burden to prove he has not practiced during the period of suspension, that he has acquired malpractice insurance, and that he meets all the requirements of Iowa Court Rule 35.13. Costs of the action shall be taxed to Moorman pursuant to rule 35.25(1).

**LICENSE SUSPENDED.**