# IN THE SUPREME COURT OF IOWA

No. 19 / 06-1520

Filed March 23, 2007

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD**,

Complainant,

vs.

**RYAN B. MOORMAN**,

Respondent.

---

On review of the report of the Grievance Commission.

Iowa Supreme Court Grievance Commission recommends a two-year suspension of respondent's license to practice law. A public reprimand is imposed. **ATTORNEY REPRIMANDED.**

Charles L. Harrington and Teresa A. Vens, Des Moines, for complainant.

Ryan B. Moorman, Modesto, California, pro se.

**WIGGINS, Justice.**

On March 1, 2006, the Iowa Supreme Court Attorney Disciplinary Board filed an eight-count complaint against Ryan B. Moorman alleging he violated various rules of the Iowa Code of Professional Responsibility for Lawyers. Prior to the hearing the Board and Moorman entered into a stipulation of facts. Moorman and the Board stipulated to all of Moorman's various violations of the rules of the Iowa Code of Professional Responsibility for Lawyers contained in the complaint. Additionally, the parties stipulated this court had previously suspended Moorman's license to practice law indefinitely on June 16, 2004, with no possibility of reinstatement for two years. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman,* 683 N.W.2d 549, 554 (Iowa 2004). The stipulation also waived a hearing and authorized the Iowa Supreme Court Grievance Commission to close the record.

The Commission found Moorman violated the provisions of the Iowa Code of Professional Responsibility for Lawyers as stipulated. It recommended we suspend Moorman's license to practice law for an additional two years. The Commission also recommended this court not allow Moorman to practice law in this state until he repays his clients the fees he collected without performing services for them. Further, the Commission recommended Moorman only practice law in this state upon a showing that he is associated with a firm or that he has taken and continues to take a law practice mentoring program.

Although we agree with the Commission that Moorman violated numerous provisions of the Iowa Code of Professional Responsibility for Lawyers, we disagree that his license to practice law should be suspended indefinitely with no possibility of reinstatement for two years. In view of the two-year suspension we previously imposed for substantially similar

conduct occurring during the same time frame as the misconduct at issue here, we believe a public reprimand is sufficient. Accordingly, we reprimand Moorman for his conduct involved in this disciplinary proceeding.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Walker,* 712 N.W.2d 683, 684 (Iowa 2006). The Board must prove ethical violations by a convincing preponderance of the evidence. *Id.* "Although we consider the Commission's factual findings and discipline recommendations, they do not bind us." *Id.* Upon review, we can impose a greater or lesser sanction than the Commission recommended. Iowa Ct. R. 35.10(1).

On our de novo review, we find the facts as follows. Moorman neglected to prosecute Jose Martinez's post-conviction relief action in 2003. Martinez filed an ethics complaint with the Board. The Board attempted to notify Moorman by restricted certified mail of Martinez's complaint, but the Board's letter was returned. The Board then personally served Moorman with notice of the complaint and requested a response. Moorman did not reply. The Board sent a second notice to Moorman. This notice was also returned to the Board. The Board sent a third letter by ordinary mail, but Moorman did not respond.

Between 2001 and 2003 Moorman neglected to prosecute Stanley Reed's post-conviction relief action. Moorman received a $2000 retainer from Reed, but he did not perform the services he agreed to do. Reed filed a complaint with the Board and an application for reimbursement with the client security commission. The Board sent Moorman a notice of the complaint, which was returned. The Board then served the notice on Moorman's wife, Kristen, at their residence. A second notice was sent and signed for by Moorman. Although a response was required, he did not respond. Moorman also received a copy of the application for

reimbursement by certified mail, but he did not respond to the application as required.

Between 2003 and 2004 Moorman neglected Randy Estabrook's post-conviction relief action. Estabrook filed a complaint with the Board. The Board notified Moorman of the complaint by restricted certified mail. A response was required, but Moorman did not respond. The Board attempted to serve Moorman with a second notice, but it was returned. The Board sent the second notice again, this time by regular mail. Moorman never responded.

Also between 2003 and 2004 Moorman neglected to defend Rogelio Arce-Lopez in his criminal case. In the Arce-Lopez matter, Moorman received a $1250 retainer, however, he failed to return the retainer or provide Arce-Lopez an accounting as Moorman promised. After finding Moorman had "abandoned his representation" of Arce-Lopez, the judge in the case filed a complaint with the Board. The Board notified Moorman of the complaint by restricted certified mail and required a response, but Moorman did not reply. The Board served Moorman again by restricted certified mail, but Moorman did not respond.

Finally, Moorman neglected Ronda Kumberg's forfeiture matter. In 2003 Kumberg hired Moorman to represent her in a forfeiture action. Kumberg paid Moorman a $5000 retainer. However, Moorman neglected to appear in the action, and Kumberg forfeited her property to the state.

In addition to these matters, in 2002 Crysthian Israel Mayoral's wife, Maria Mayoral, retained Moorman to represent Crysthian in a criminal appeal. Moorman's neglect in handling Crysthian's appeal was one of the acts leading to Moorman's suspension in 2004. In the present matter, we are concerned about the $3300 retainer he received from Maria. Maria requested an accounting from Moorman concerning her retainer, but he did

not provide one. Moorman also did not respond to Maria's phone calls or another attorney's inquiries on behalf of Maria requesting an accounting of the fees.

Additionally, in 2003 Moorman wrote a check to the client security trust fund for $110 and to the commission on continuing legal education for $35. The bank returned both checks as unpaid because Moorman wrote the checks on a closed account. The assistant court administrator wrote to Moorman about the dishonored checks, but Moorman did not respond. The Board then wrote to Moorman and notified him about the returned checks, and that drawing on checks from a closed account appeared to be a violation of DR 1-102(A)(4), (5), and (6). The Board requested a response. Moorman received the Board's communication, but he did not respond. The Board sent an additional letter regarding these checks, but Moorman did not respond to this letter.

The last matter concerning Moorman's misconduct involves the Larry E. Cody matter. In 2003 Cody filed an ethics complaint against Moorman with the Board. The Board notified Moorman of the complaint on three separate occasions, twice by restricted certified mail and once by ordinary mail. The Board required a response from Moorman, but he did not respond.

Moorman's failure to respond to the Board's notices violates Iowa Code of Professional Responsibility for Lawyers DR 1-102(A)(5) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) and DR 1-102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the fitness to practice law).

Moorman's failure to prosecute the post-conviction relief actions, to appear in the forfeiture action, and to defend the criminal matter violates Iowa Code of Professional Responsibility for Lawyers DR 1-102(A)(5), DR 1-

102(A)(6), DR 6-101(A)(3) (prohibiting a lawyer from neglecting a client's legal matter), and DR 7-101(A) (prohibiting a lawyer from intentionally failing to seek the lawful objectives of a client, failing to carry out a contract of employment for professional services with a client, or prejudicing or damaging a client during the course of the professional relationship).

Moorman's acceptance of retainer fees from his clients and his subsequent failure to account for these fees violates Iowa Code of Professional Responsibility for Lawyers DR 1-102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude), DR 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1-102(A)(5), DR 1-102(A)(6), DR 6-101(A)(3), DR 7-101(A), DR 9-102(B)(3) (requiring a lawyer to maintain records of client funds and render appropriate accounts), and DR 9-102(B)(4) (requiring a lawyer to promptly pay and deliver funds as requested by a client).

When Moorman wrote checks on a closed account he violated Iowa Code of Professional Responsibility for Lawyers DR 1-102(A)(4), DR 1-102(A)(5), and DR 1-102(A)(6).

We have suspended an attorney's license to practice law for up to two years for conduct similar to Moorman's conduct. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCann,* 712 N.W.2d 89, 96 (Iowa 2006) (suspending the attorney's license for two years where the attorney's conduct "consist[ed] of multiple acts of neglecting clients' matters, misrepresenting how he was processing the matters to his clients, misrepresenting a matter to the court, misrepresenting a matter to the Polk County Ethics Committee, failing to withdraw from a matter when discharged, failing to deposit retainers in a trust account, failing to maintain proper books and records regarding a trust account, failing to

deliver client funds when requested to do so, using funds that belong in a trust account for personal or business use, and failing to respond to the Board's inquiries"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Maxwell*, 705 N.W.2d 477, 478-80 (Iowa 2005) (suspending the license of an attorney, with a history of prior disciplinary actions involving client neglect, for one year when the attorney neglected to file actions and to notify a client of a hearing); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moonen*, 706 N.W.2d 391, 401 (Iowa 2005) (imposing an eighteen-month suspension where "[the lawyer]'s misconduct include[d] neglecting legal matters, loaning money to himself, taking fees without a proper accounting, making a misrepresentation to the court, failing to render appropriate accounts, failing to promptly distribute funds as required by the trust, failing to maintain books and records, and failing to cooperate with the disciplinary process"); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken*, 688 N.W.2d 812, 820, 822 (Iowa 2004) (imposing a two-year suspension where the attorney's conduct involved "multiple acts of making misrepresentations to the court, disregarding court orders, neglecting client matters, misrepresenting the status of matters to [ ] clients, and failing to respond to the Board's inquiries").

However, in determining the appropriate sanction for Moorman, we must consider Moorman's previous suspension. There we suspended Moorman's license to practice law, in part, for his failure to file a personal injury action on behalf of his client. *Moorman*, 683 N.W.2d at 552-53. After missing a statute of limitations, Moorman told his client he would pay her the amount of money he believed she would have received if he had timely filed the suit. *Id.* at 550-51. Then Moorman failed to pay his client the sum he promised. *Id.* at 551. Additionally, in an attempt to obtain medical coverage for this client, Moorman offered to misrepresent the date of his

client's accident to an insurance company. *Id.* Because of Moorman's conduct, his client was forced to file for bankruptcy. *Id.* In addition to his conduct involving this client, Moorman neglected five separate criminal and juvenile appeals. *Id.* Moorman's actions caused us to suspend Moorman's license to practice law indefinitely with no possibility of reinstatement for two years. *Id.* at 554.

All of Moorman's conduct that is the subject of the present disciplinary action occurred prior to June 16, 2004, the date we suspended Moorman's license to practice law for two years. Moorman's conduct in the prior disciplinary proceeding and in this proceeding is similar and demonstrates the same pattern of conduct. Under these circumstances, we are allowed to impose a concurrent sanction instead of a consecutive sanction. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. O'Brien*, 690 N.W.2d 57, 58-59 (Iowa 2004) (finding even if at the time of the previous disciplinary action the court had been aware of the newly charged violations, which occurred prior to the previous disciplinary action, it is unlikely that this information would have resulted in a more lengthy suspension; and therefore running the suspension concurrent to the previous suspension); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo*, 652 N.W.2d 213, 215 (Iowa 2002) (imposing a concurrent sentence, reasoning if additional violations had been brought to the court's attention at the time of the previous sanction, the court "seriously doubt[s] that respondent's prior suspension … would have been enlarged"). Had we been aware of the conduct that is the subject of this disciplinary proceeding at the time of our previous decision, it is unlikely this conduct would have caused us to suspend Moorman's license for longer than two years. Because Moorman's license is presently under suspension, we see no purpose served by ordering another suspension insofar as a deterrence or

protection of the public is concerned. *See Comm. on Prof'l Ethics & Conduct v. Clauss*, 468 N.W.2d 213, 215 (Iowa 1991) (reprimanding an attorney for conduct that occurred before a prior suspension when the conduct that was the subject of the present proceeding would not have lengthened the prior suspension).

Accordingly, for Moorman's conduct in the present disciplinary proceeding we impose a public reprimand rather than the suspension recommended by the Commission. However, as a condition of reinstatement from his prior suspension, Moorman must repay all of his clients involved in this disciplinary proceeding the fees he collected without performing services for them. Moorman must repay Reed $2000, Arce-Lopez $1250, Kumberg $5000, and Mayoral $3300. We tax the costs of this action to Moorman pursuant to Iowa Court Rule 35.25.

**ATTORNEY REPRIMANDED.**