# IN THE SUPREME COURT OF IOWA

No. 20–0298

Submitted July 14, 2020—Filed September 4, 2020

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**JOHN P. BEAUVAIS JR.,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends a three-month suspension for violation of attorney ethics rules. **LICENSE SUSPENDED.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Tara van Brederode and Crystal W. Rink, Des Moines, for complainant.

John P. Beauvais Jr., Sioux City, pro se.

**McDERMOTT, Justice.**

With trial looming and a discovery sanctions motion pending, a woefully underprepared lawyer told opposing counsel and the court that his client had accepted the opponent's $15,000 settlement offer. But the client had forcefully rejected that offer, saying she'd rather get nothing. The lawyer then pressured the client into accepting the $15,000 settlement using false information.

This case is a cautionary tale to the unprepared lawyer to avoid attempts to whitewash one's poor performance by pressuring a client to settle to end the case. Here, the settlement ended the lawsuit but triggered this attorney disciplinary matter.

A division of our grievance commission heard the evidence and concluded the lawyer committed multiple violations of the Iowa Rules of Professional Conduct and recommended a three-month suspension of the lawyer's license. Upon our review, we find all the same violations of our ethics rules and impose the recommended three-month suspension.

### I. Background Facts and Proceedings.

John Beauvais Jr. graduated from law school in 2013 and was admitted to practice law in Iowa that same year. He started his legal career as an associate with a Sioux City law firm, but after a couple years (in March 2016), he left to start a solo practice.

In September 2014, while still at his prior firm, Beauvais filed a personal injury lawsuit on behalf of Sharel Banks and her minor child against the owner and manager of a rental property where Banks and the child previously lived. The lawsuit sought damages for the child's exposure to lead paint while residing at the rental property.

Beauvais gave a phoned-in performance as Banks's advocate in the litigation. He had to file a motion to extend time for service because he

failed to serve one of the defendants within the required time period. On November 23—shortly after Beauvais had served the lawsuit on both defendants—the defendants' counsel asked Beauvais to provide a settlement demand. Beauvais failed to provide one. On January 7, 2015, defendants' counsel made the request again. Beauvais again failed to provide one. On February 5, and again on February 26, defendants' counsel made requests for a settlement demand. Beauvais failed to respond each time.

On March 9, the defendants served discovery requests. Beauvais didn't contact Banks to discuss these requests or provide her a copy of them. He never served any discovery requests on behalf of his clients at any point. He also never requested or took depositions of the defendants or any other witnesses.

On March 9, Beauvais did file an expert witness designation on his clients' behalf, identifying Heather Christiansen as an expert. The problem: Christiansen and Beauvais had never communicated about the matter. Beauvais didn't know what opinions, if any, she would offer in the case. On March 14, opposing counsel requested Christiansen's expert report. Beauvais didn't respond.

On March 18, Beauvais notified the court that he'd left his law firm and started his solo practice. But he didn't notify Banks, who learned Beauvais left when she later tried to contact Beauvais at his prior firm to get an update on her case.

Defendants' counsel sent Beauvais a letter on April 14, again requesting Christiansen's expert report, and another letter on April 25, requesting the overdue discovery responses. Beauvais never responded to either letter. On May 10, defendants' counsel left Beauvais a phone message. Beauvais didn't return it.

On May 11, defendants' counsel filed a motion to compel the overdue discovery responses. The district court set a hearing for May 25. Beauvais didn't file a resistance to the motion and didn't appear for the hearing. The district court granted the motion to compel and gave Beauvais fifteen days to provide responses. Beauvais didn't provide responses by the deadline but did provide responses several days after the deadline. Defendants' counsel later filed motions to compel and for sanctions alleging deficiencies in the discovery responses.

On June 8, Beauvais filed a designation of rebuttal expert witnesses identifying Brett Kuhn and Cynthia Ellis as rebuttal experts. But these designations had the same problem as the prior one: Beauvais hadn't communicated with Kuhn or Ellis and thus didn't know what opinions, if any, they might offer in the case.

On June 23, defendants' counsel once again asked for a settlement demand from Beauvais to resolve the case. Beauvais once again didn't respond to opposing counsel. Beauvais never informed Banks of the defendants' repeated requests for a settlement demand throughout the case.

Meanwhile, defendants' counsel requested from Beauvais open dates for depositions in the case. Beauvais didn't respond, so defendants' counsel unilaterally scheduled depositions, including the deposition of Banks. After Banks's deposition, defendants' counsel twice requested a lead paint pamphlet that Banks referenced in her testimony. Beauvais never contacted Banks asking for the pamphlet and never responded to opposing counsel's request.

On August 8—the day before the scheduled hearing on defendants' motions to compel and for sanctions, one month before the September 6 jury trial date, and more than eight months after defendants first

requested it—Beauvais finally sent a settlement demand to defendants' counsel. The amount demanded: $356,000.

The next day, Banks asked Beauvais for a copy of the settlement demand letter and an update on the case. Beauvais responded but didn't provide the email containing the settlement demand. He also didn't mention the impending hearing on the motions to compel and for sanctions, or the need to supplement the discovery responses. Defendants' counsel made two more requests for the lead paint pamphlet, again without action by Beauvais. When Beauvais later informed Banks about the hearing on the motions, he misrepresented to her that its scheduling was "very much a last minute thing."

On August 23, defendants' counsel presented Beauvais with a settlement offer of $10,000. Beauvais never communicated the offer to Banks. The next day, Beauvais filed a motion to continue the September 6 trial date. The defendants resisted the motion.

On August 30, the defendants also filed a motion in limine seeking to prevent the plaintiffs from presenting testimony about damages based on the failure to respond adequately to the defendants' damages interrogatory. The motion in limine also sought to prevent the plaintiffs' designated experts from testifying about causation and to prevent testimony from a potential as-yet undesignated medical expert who'd not yet been disclosed. (The same day, well beyond the expert deadline, Beauvais filed a supplemental expert designation listing a new doctor as an expert.) Beauvais failed to file any trial witness or exhibit lists, or any proposed jury instructions, seven days before the trial as required.

On August 31, the district court held a telephonic hearing on Beauvais's motion to continue the trial and on the defendants' various motions. The district court granted the motion to continue the trial but

noted the plaintiffs' failures to disclose damages, experts, or any witnesses on causation. In its order the court said the "entire cause" for the case not being ready for trial was "Beauvais's inexperience and unfamiliarity with the rules." Beauvais never provided this court order to Banks.

The next day, on September 1, the defendants made a $15,000 settlement offer. This time Beauvais promptly emailed Banks about it, telling her, "I strongly advise you to accept this offer." But Banks firmly rejected the offer, emailing Beauvais that she'd "rather get NOTHING." Beauvais continued to urge Banks to accept the $15,000 settlement offer and told her the court was likely to dismiss her lawsuit if she didn't settle it. Banks reiterated to Beauvais that she had no interest in settling for $15,000.

Notwithstanding Bank's decision, on September 2, Beauvais told defendants' counsel that Banks accepted the $15,000 settlement offer. But Beauvais didn't tell Banks. Four days later, Banks appeared at the courthouse to attend the hearing scheduled on the pending motions. Only then she learned—from courthouse staff—that there would be no hearing because her case had settled.

On September 14, defendants' counsel sent Beauvais the settlement check, release, and dismissal with prejudice. On October 5, having received no response from Beauvais, defendants' counsel sent a follow-up letter. Beauvais still didn't respond. On October 21, defendants' counsel filed a motion to enforce the settlement agreement. The district court scheduled a hearing for November 18. Beauvais didn't inform Banks of the pending motion or the hearing.

At the hearing, Beauvais told the district court that Banks had previously agreed to the $15,000 settlement offer. The court thus granted the motion to enforce the settlement. The order required Banks to sign

the agreement, and if she didn't, the court would dismiss her case with prejudice. Beauvais didn't provide Banks a copy of the order.

On November 29, Beauvais sent Banks both a letter and an email informing her that if she didn't sign the agreement she would be "in contempt of the Court order." But the court's order made no mention or threat of holding Banks in contempt. When Banks sent Beauvais a text asking what would happen if she didn't sign the agreement, Beauvais responded that she could have to pay over $3000 in attorney fees and could be assessed court costs. These repercussions, again, were nowhere in the court's order.

Several days later, Banks emailed Beauvais stating she didn't want to owe $3000 in attorney fees, be assessed court fees, or have her case dismissed. Saying she felt she had no "other option at this point," Banks signed the settlement agreement. Beauvais filed the dismissal with prejudice ending the litigation. During the course of the case, Beauvais never provided Banks with copies of any pleadings, court orders, or any of the many pieces of correspondence from defendants' counsel that he'd received.

Banks complained to the Iowa Supreme Court Attorney Disciplinary Board. The Board thereafter filed a complaint against Beauvais with the Iowa Supreme Court Grievance Commission alleging multiple violations of the Iowa Rules of Professional Conduct. Beauvais filed an answer admitting to some facts and violations and denying others. A division of the grievance commission held a hearing and found the Board proved all the rule violations alleged and recommended a three-month suspension.

## II. Standard of Review.

We conduct a de novo review of attorney disciplinary cases. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d 689, 696 (Iowa

2014). While we respectfully consider the findings of the grievance commission, we aren't bound by them. *Id.* The Board has the burden of proving rule violations by a "convincing preponderance of the evidence," which is more demanding than the "preponderance of the evidence" standard, but less demanding than proof "beyond a reasonable doubt." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 461 (Iowa 2014).

### III. Ethical Violations.

**A. Competence.** Iowa Rule of Professional Conduct 32:1.1 requires lawyers to provide "competent representation" to clients. "Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." *Id.* To establish a violation of this rule, the Board must prove the lawyer "did not possess the requisite legal knowledge and skill to handle the case or that the attorney did not make a competent analysis of the factual and legal elements of the matter." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kennedy*, 837 N.W.2d 659, 668 (Iowa 2013) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 794 N.W.2d 290, 293 n.2 (Iowa 2011)).

Beauvais admitted multiple times at the hearing that he lacked the experience to handle this type of case. Although he was aware toxic tort litigation generally required expert testimony on causation and damages, Beauvais failed to secure an expert on either subject. He instead designated four different experts at various points despite never speaking to any of them about their opinions, preparing expert reports, or testifying at trial. And despite the complexity of the claims in the case, he served no written interrogatories, requests for production of documents, or subpoenas, and took no depositions.

Both Beauvais's actions and failures to act lay bare his admitted lack of legal knowledge and skill to handle this case. The Board proved a violation of rule 32:1.1.

**B. Abiding by Client Decisions and Candor Toward the Court.** Iowa Rule of Professional Conduct 32:1.2(a) states that "a lawyer shall abide by a client's decisions concerning the objectives of representation" and "consult with the client as to the means by which they are to be pursued." As to settlement, our ethics rules are explicit about who calls the shots: "A lawyer shall abide by a client's decision whether to settle a matter." *Id.*; *see also* 16 Gregory C. Sisk & Mark S. Cady, *Iowa Practice Series™: Lawyer and Judicial Ethics* § 5:2(b) author's cmt., at 162 (2020 ed.) [hereinafter *Lawyer and Judicial Ethics*] ("Rule 1.2(a) explicitly places certain decisions under the client's exclusive authority. The client in civil litigation has the right to decide whether to settle a matter and on what basis."). The Board proved Beauvais failed to abide by his client's firmly held, and firmly stated, decision to reject the $15,000 settlement offer.

Iowa Rule of Professional Conduct 32:3.3(a)(1) prohibits a lawyer from "knowingly" making any "false statement of fact or law to a tribunal," or its corollary, failing to correct a previously made false statement. "Knowingly" means "actual knowledge of the fact in question," and "may be inferred from circumstances." *Id.* r. 32:1.0(f). The Board proved Beauvais knowingly made a false statement to the district court when he reported that his client had agreed to settle the case when he knew she hadn't.

**C. Diligence.** Rule 32:1.3 requires lawyers to "act with reasonable diligence and promptness in representing a client." *Id.* r. 32:1.3. Beauvais demonstrated neglect of Banks's case most obviously in his failure to pursue proof on the linchpin elements of causation and damages.

Neglect of a client's case "often involves procrastination, such as a lawyer doing little or nothing to advance the interests of a client after agreeing to represent the client." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Humphrey*, 812 N.W.2d 659, 666 (Iowa 2012) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 552 (Iowa 2004)). Examples of Beauvais's procrastination in this case are many. He failed to timely contact Banks concerning defendants' counsel's repeated requests for a settlement demand. He failed to respond timely to discovery, prompting a motion to compel, and then failed to respond by the court-ordered response deadline after the district court granted the motion to compel. After receiving a second motion to compel, he waited almost two months to notify his client about the need to provide supplemental responses. He failed to communicate with any expert witnesses, despite designating four different ones, and filed a late supplemental expert witness designation. And he failed to file a witness or exhibit list, or any proposed jury instructions, by the deadline seven days before trial.

Beauvais didn't act with reasonable diligence in this matter. The Board proved a violation of this rule.

**D. Communication.** The Board charged several violations relating to Beauvais's failures to communicate with Banks. Iowa Rule of Professional Conduct 32:1.4(a)(1) commands a lawyer to "promptly inform the client of any decision or circumstance" that requires the client's informed consent. Rule 32:1.4(a)(3) requires a lawyer to "keep the client reasonably informed about the status of the matter." *Id.* r. 32:1.4(a)(3). And rule 32:1.4(b) compels a lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." *Id.* r. 32:1.4(b).

Settlement decisions require a client's informed consent. When an opposing party makes a settlement offer, a lawyer "must promptly inform the client of its substance unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer." *Id.* r. 32:1.4 cmt. 2. Banks testified that she never discussed with Beauvais a "zone of possible settlement" and had never given him authority to accept any particular settlement amount. The commission didn't find credible Beauvais's claim that Banks preemptively told Beauvais she wouldn't accept a $10,000 settlement offer, and the commission thus determined Beauvais committed an ethics violation in failing to contact her about that offer. We agree with the commission's finding and its related determination that the Board proved a violation of rule 32:1.4(a)(1) based on Beauvais's failure to communicate the defendants' $10,000 settlement offer.

Beauvais admitted that he generally failed to keep Banks reasonably informed about her case. But Beauvais failed in particular to communicate about subjects that would have alerted Banks to Beauvais's lack of diligence throughout the case. For example, Beauvais didn't provide Banks copies of court orders and motions that negatively portrayed his performance in the case, including the motions to compel and motion for sanctions, the district court order stating the entire cause for the trial delay was Beauvais's "inexperience and unfamiliarity with the rules," and the motion to enforce settlement related to Banks's made-up acceptance of the $15,000 settlement offer. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Noel*, 933 N.W.2d 190, 200 (Iowa 2019) (finding violation when lawyer failed to disclose a motion to compel). A lawyer's duty to keep clients reasonably informed "applies even when the information to be

shared does not cast the lawyer in a positive light." *Lawyer and Judicial Ethics* § 5:4(e) author's cmt., at 198.

The Board proved Beauvais similarly failed to explain matters to enable Banks to make informed decisions in the case. Beauvais's failure to inform Banks of the motions to compel or sanctions—or the ramifications of those motions—ensured she didn't have enough information to make informed decisions or to participate in those aspects of her case. *See Noel*, 933 N.W.2d at 200.

At a minimum, lawyers in litigation "should explain the general strategy and prospects of success." Iowa R. Prof'l Conduct 32:1.4 cmt. 5. But it's not clear Beauvais developed, let alone communicated, much of any strategy about how he intended to advance her case. Beauvais testified that he never figured out how he'd prove causation or damages. Beauvais's failure to inform and involve Banks understandably spurred Banks's confusion and anger when Beauvais later pushed her to accept settlement to avoid dismissal of the case or payment of attorney fees and court costs.

**E. Discovery Response Failures.** Rule 32:3.4(d) prohibits a lawyer from failing to make "a reasonably diligent effort to comply with a legally proper discovery request." *Id.* r. 32:3.4(d). In *Iowa Supreme Court Attorney Disciplinary Board v. Noel*, we found a violation of this rule when a lawyer failed to respond to discovery, forcing opposing counsel to inquire repeatedly about the missing responses; failed to timely respond to opposing counsel's reasonable inquiries; provided late responses despite a court order granting a motion to compel that gave a specific date for production; and delayed in responding, causing the opposing party to file a motion for sanctions and motion in limine to exclude evidence not

produced in discovery. 933 N.W.2d at 202–03. Beauvais's conduct checks each of these boxes.

Beauvais said he didn't timely respond to opposing counsel's requests because he was "trying to cover for the fact that we did not have the evidence, the link, the proof of damages that we needed." But the defendants had a right to obtain evidence and information about Beauvais's clients' claims, and his stonewalling to prevent disclosure of the lack of evidence likely drove up unnecessary costs for the defendants and certainly caused unreasonable delay as they sought to defend against the claims. The Board proved a violation of this rule.

**F. Misrepresentation.** Rule 32:8.4(c) prohibits a lawyer from engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). To show a violation, the Board must prove that the attorney "acted with 'some level of scienter' rather than mere negligence." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Meyer*, 944 N.W.2d 61, 69 (Iowa 2020) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Green*, 888 N.W.2d 398, 403 (Iowa 2016)). We must sort out "whether the effect of the lawyer's conduct is to mislead rather than to inform." *Id.* at 404.

Beauvais misrepresented to opposing counsel, and later to the court, that his client had accepted the $15,000 settlement offer when she hadn't. Falsehoods have a tendency to metastasize like cancers, as happened here: When the district court granted the motion to enforce the settlement, Beauvais emailed Banks with unsupported threats that if she didn't sign the agreement the court would hold her in contempt, make her pay over $3000 in attorney fees, and assess court costs against her. The district court's order said none of this.

Beauvais testified that he misused the word "contempt" and wasn't trying to misrepresent the court's order. But he also testified that his threat about Banks risking payment of $3000 concerned his potential refusal to lower his own fee, not a fee shifting in which Banks would be made to pay defendants' legal fees. This appears at odds with their communications in the written correspondence. And we must view all of these statements in the context of the litigation. Beauvais had done hardly any of the necessary work on the case when, with trial imminent, he falsely told opposing counsel that his client had accepted the $15,000 settlement offer. There's a strong link between Beauvais's misrepresentations to convince Banks to settle to end the case and his earlier performance failures in the litigation. The Board proved Beauvais knowingly and intentionally made misrepresentations in violation of the rule.

**G. Prejudice to the Administration of Justice.** Rule 32:8.4(d) prohibits conduct "prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). While there is no "typical" conduct that prejudices the administration of justice, it includes conduct that hampers "the efficient and proper operation of the courts," such as unnecessary court proceedings, delays, or dismissals. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Vandel*, 889 N.W.2d 659, 666 (Iowa 2017) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010)).

Beauvais's repeated failures to respond to discovery requests required the defendants to file two motions to compel and a motion for sanctions and for the court to hold hearings on these motions. More importantly, the district court delayed the trial in this matter days before the scheduled start date, blaming Beauvais. Beauvais's neglect and "untimely handling of discovery matters resulted in additional court

proceedings and caused other court proceedings to be delayed." *Noel*, 933 N.W.2d at 204 (finding violation of rule 32:8.4(d)). The Board proved a violation of this rule.

**IV. Sanction.**

The purposes of lawyer discipline include protection of the public, the need for deterring other lawyers from similar misconduct, upholding the integrity of the legal system, and assuring the fair administration of justice. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kozlik*, 943 N.W.2d 589, 595 (Iowa 2020); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 109 (Iowa 2012); *see also* Am. Bar Ass'n, *Annotated Standards for Imposing Lawyer Sanctions* § 1.1, at 1 (2015).

We have no standard sanction for particular types of misconduct. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 660 (Iowa 2013). We determine the appropriate sanctions based on the unique circumstances of the case before us, but we aim for consistency with our prior cases in imposing sanctions. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 182 (Iowa 2013); *McGinness*, 844 N.W.2d at 464. In determining the appropriate sanction, we analyze the nature of ethical duty the lawyer violated, the lawyer's mental state, the extent of the actual or potential injury caused by the lawyer's misconduct, and any aggravating and mitigating circumstances. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schall*, 814 N.W.2d 210, 214 (Iowa 2012); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lustgraaf*, 792 N.W.2d 295, 301 (Iowa 2010); *see also* Am. Bar Ass'n, *Annotated Standards for Imposing Lawyer Sanctions* § 3.0, at 113.

We give respectful consideration to the commission's findings and recommendations but may impose a greater or lesser sanction than what the commission recommends. *Iowa Supreme Ct. Att'y Disciplinary Bd. v.*

*Stoller*, 879 N.W.2d 199, 207 (Iowa 2016). The commission recommended a three-month suspension. The Board asks us to follow the commission's recommendation, while Beauvais argues for a one-month suspension.

Attorney neglect cases typically result in sanctions anywhere from a public reprimand to a six-month suspension. *Kennedy*, 837 N.W.2d at 675. "In cases involving neglect in one or two cases and other misconduct such as misrepresentations associated with the neglect, the suspensions have been in the range of three months." *Id.* (quoting *Van Ginkel*, 809 N.W.2d at 109).

Sanctions for misconduct involving misrepresentations have varied depending on the nature of the misrepresentation and other unethical conduct proved in the case. *See, e.g., McGinness*, 844 N.W.2d at 467 (six-month suspension for falsifying civil discovery and making repeated misrepresentations about it); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kallsen*, 814 N.W.2d 233, 240 (Iowa 2012) (one-year suspension for forging guilty plea document); *Van Ginkel*, 809 N.W.2d at 110–11 (two-month suspension for filing interlocutory report with a false statement and other violations); *Comm. on Prof'l Ethics & Conduct v. Bauerle*, 460 N.W.2d 452, 454 (Iowa 1990) (six-month suspension for alteration and backdating of partnership documents with false notarization). As we noted in *Iowa Supreme Court Attorney Disciplinary Board v. McGinness*, a number of our disciplinary cases imposing six-month suspensions for dishonesty or misrepresentation have involved additional unethical conduct. 844 N.W.2d at 465 (six-month suspension for misrepresentations as well as neglect and other violations); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 288–89 (Iowa 2009) (per curiam) (same); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 726 N.W.2d 397, 408 (Iowa 2007) (six-month suspension for misrepresentation and various

other disciplinary violations); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein*, 586 N.W.2d 523, 526 (Iowa 1998) (six-month suspension for intentional misrepresentations and neglect).

In *Iowa Supreme Court Attorney Disciplinary Board v. Kennedy*, a lawyer severely neglected multiple client matters and failed to communicate with his clients, violating five of the same ethics violations as in this case. 837 N.W.2d at 667–72. We suspended the lawyer's license for one year. *Id.* at 678. But *Kennedy* involved neglect of many more clients that suffered harm than in this case, and the lawyer had a disciplinary history with similar prior ethics violations, suggesting the lawyer hadn't adequately addressed the problems. *Id.* at 677 (noting prior sixty-day suspension primarily for neglect).

In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Hohenadel*, a lawyer neglected two client matters and made misrepresentations to the court and his clients about the status of those matters. 634 N.W.2d 652, 653 (Iowa 2001). We determined the conduct warranted a four-month suspension. *Id.* at 657; *see also Comm. on Prof'l Ethics & Conduct v. Horn*, 379 N.W.2d 6, 9–10 (Iowa 1985) (finding a lawyer's failure to cooperate in his disciplinary matter, neglect of a client matter, and misrepresentations warranted a three-month suspension).

In *Iowa Supreme Court Attorney Disciplinary Board v. Van Ginkel*, a lawyer neglected an estate case and made false statements to the court, violating multiple ethics rules. 809 N.W.2d at 109–10. We considered Van Ginkel's misrepresentation to the district court "a particularly disturbing factor" in our analysis of the sanction. *Id.* at 111. We suspended his license for sixty days. *Id.* But unlike here, there was no evidence the ethics violations in *Van Ginkel* harmed the client. *Id.* at 110.

We turn to aggravating and mitigating factors. Multiple rule violations, as we have here, are an aggravating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 925 N.W.2d 163, 181 (Iowa 2019). Client harm, also present here, is likewise an aggravating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kingery*, 871 N.W.2d 109, 122 (Iowa 2015).

There are also several mitigating factors to consider. The foremost is Beauvais's acute inexperience when he took on this case. A lawyer's inexperience can be a mitigating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 155 (Iowa 2018). Beauvais now recognizes that he had no business taking on a complicated toxic tort case of this type considering his lack of training and support. He had no experience evaluating, engaging, and assisting the types of expert witnesses he was relying on to prove causation and damages, and he apparently had no mentors or other experienced hands available to help train or assist him on these things as the case proceeded.

Beauvais expressed remorse and admitted to many of his failures in this case. Remorse is a mitigating factor, as are admissions to violations. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Jacobsma*, 920 N.W.2d 813, 820–21 (Iowa 2018). Although Beauvais could have been more fulsome in his admission of certain mistakes he made (as the Board points out), his acknowledgment of mistakes on many aspects of his conduct is noteworthy. His admissions are borne out in his self-limitation of practice areas in the future to avoid repeating the mistakes in this case. Voluntary remedial efforts are, similarly, mitigating factors. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. West*, 901 N.W.2d 519, 528 (Iowa 2017).

Beauvais testified to suffering from depression, attention deficit hyperactivity disorder, and anxiety. Beauvais testified that each played a role in some aspect of his misconduct in this case. Each can constitute a

mitigating condition if the lawyer seeks treatment to address it. *See Turner*, 918 N.W.2d at 156. Beauvais disclosed the steps he's taking to address them.

Finally, Beauvais's legal work with an underserved part of the community is a mitigating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weiland*, 862 N.W.2d 627, 643 (Iowa 2015). Beauvais provides substantial services to indigent people and clients, and he provided free legal assistance at the self-help desk at the Woodbury County Courthouse and in two different legal aid clinics. We've recognized such service as a mitigating factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ackerman*, 786 N.W.2d 491, 497–98 (Iowa 2010).

While Beauvais's inexperience when he handled this case is a significant mitigating factor, "neglect compounded by misrepresentation will warrant a more severe sanction because of the critical importance of honesty in our profession." *Humphrey*, 812 N.W.2d at 666 (quoting *Thomas*, 794 N.W.2d at 294). Even inexperienced lawyers must know better than to make misrepresentations to their clients, opposing counsel, and the court.

His inexperience in the practice and lack of support had Beauvais in a hole seemingly from the outset. His severe neglect only deepened the hole. Having found himself in a hole as trial drew near, he would have been wise to abide the adage to "stop digging." But he instead pursued a path to paper over his failures with misrepresentations that harmed his clients. We find the commission's recommendation of a three-month suspension is appropriate.

### V. Disposition.

We suspend the license to practice law of John P. Beauvais Jr. with no possibility for reinstatement for three months. This suspension applies

to all facets of the practice of law. He must comply with the notification requirements in Iowa Court Rule 34.24. We tax the costs of this action to Beauvais under Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**