896 So.2d 742 (2005)
THE FLORIDA BAR, Complainant,
v.
Lee Howard GROSS, Respondent.
Nos. SC01-1403, SC01-2737, SC02-1592, SC03-210.
Supreme Court of Florida.
March 3, 2005.
*743 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, Tallahassee, FL, and William Mulligan, Bar Counsel, Miami, FL, for Complainant.
Richard B. Marx and O. Frank Valladares of Richard B. Marx and Associates, Miami, FL, and Kristi F. Kassebaum of Manto and Kassebaum, Miami, FL, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by attorney Lee Howard Gross. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons that follow, Lee Howard Gross is disbarred from the practice of law in the State of Florida, effective, nunc pro tunc, May 21, 2002.

I. FACTS
The Florida Bar filed four complaints against respondent Lee Howard Gross, alleging numerous counts of misconduct including trust account misappropriations of over $100,000 of client funds entrusted to him, the failure to comply with a Florida Bar subpoena, the failure to defend a client in a lawsuit which resulted in a $7500 judgment against his client, the failure to communicate with this client about the suit, the forgery of a judge's signature on certain orders, the forgery of a client's signature on a written plea of guilt, the forgery of a client's signature on a check, mortgage fraud, the failure to disclose one of his trust accounts to The Florida Bar, and the failure to repay all of the trust account misappropriations. Since Gross stipulated to most of the factual allegations within the four complaints, the referee was left with making recommendations regarding which ethical violations occurred based on these stipulations and the appropriate discipline.
After a multiple-day hearing where Gross presented substantial evidence regarding a serious drug and alcohol addiction and his rehabilitation from this addiction, the referee issued an amended report recommending that Lee be found guilty of violating the following Rules Regulating The Florida Bar: 3-4.3 (a lawyer shall not commit any act that is unlawful or contrary to honesty and justice); 4-1.1 (a lawyer shall provide competent representation to a client); 4-1.2(a) (a lawyer shall abide by the client's decisions and explain matters to clients); 4-1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); 4-1.4 (a lawyer shall keep clients reasonably informed about the status of matters); 4-1.5 (a lawyer shall abide by certain rules regulating fees for legal services); 4-1.15(a) (a lawyer shall hold in trust, separate from the lawyer's own property, funds and property of clients that are in the lawyer's possession in connection with a representation); 4-1.15(b) (upon receiving funds in *744 which a client has an interest, a lawyer shall promptly notify the client); 4-1.15(d) (a lawyer shall comply with The Florida Bar Rules Regulating Trust Accounts); 4-1.16(d) (upon the termination of representation, a lawyer must take steps to protect the client's interest); 4-3.2 (a lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client); 4-3.3(a) (an attorney has the obligation to be candid with the tribunal, including not knowingly presenting false evidence and disclosing certain material facts when disclosure is necessary); 4-3.4(b) (a lawyer shall not fabricate evidence or assist a witness to testify falsely); 4-4.1 (a lawyer must be truthful in statements to others); 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another); 4-8.4(b) (a lawyer shall not commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects); 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); rule 5-1.1(a) (money entrusted to an attorney for a specific purpose is to be held in trust and must be applied only for that purpose); 5-1.1(c) (a lawyer must preserve the bank records pertaining to the funds or property of a client); 5-1.1(d) (a lawyer must maintain trust accounting records); 5-1.1(g) (a lawyer may not endanger money held in trust for a client for purposes of carrying out the business of another client without permission); 5-1.2(b) (a lawyer receiving or disbursing trust funds must maintain specific minimum trust accounting records); and 5-1.2(c) (a lawyer receiving or disbursing trust finds must follow specific minimum trust accounting procedures).[1]
In turning to the recommended discipline, the referee found as follows:
The referee can accept Respondent's argument that his misconduct was largely the product of drug and alcohol addiction. He was a competent and talented attorney before falling victim to substance abuse. Further, the referee agrees that the Respondent is remorseful for his misdeeds. He has signed a contract with Florida Lawyers Assistance, Inc. and has engaged in a course of drug and alcohol treatment.
After considering the aggravation and mitigation, however, the referee found that the range of misconduct and the number of incidents of misconduct was simply too broad to permit suspension and thus recommended that Gross be disbarred for a period of five years. The recommendation further provided that Gross's disbarment should be nunc pro tunc to May 21, 2002, the date this Court suspended Gross from practice pursuant to rule 3-5.2 of the Rules Regulating The Florida Bar. Gross filed a petition for review, challenging the referee's findings and recommendations as they pertained to the recommended discipline.

II. ANALYSIS
Neither party challenges the findings of fact or recommendations as to guilt. Accordingly, we approve the referee's recommendation that Gross be found guilty of violating the above rules without further discussion.
As to the recommended discipline, Gross presented testimony from experts and other witnesses who testified as to *745 Gross's addiction and to his rehabilitation, which did not begin until after these proceedings were well under way.[2] Based on the evidence presented in the hearing, the referee found the following mitigating factors were present: a physical or mental disability or impairment in that Gross suffered from a severe addiction, remorse, and rehabilitation.[3] As to the aggravating factors, the referee's report did not clearly state that any aggravating factors were found, and this Court will not presume certain aggravating factors were found by a referee unless the report specifically states them.[4] After balancing all of the relevant factors, the referee recommended disbarment. Gross objects to the recommended discipline, contending that based on the significant mitigating evidence presented, a long-term suspension is a sufficient sanction.[5] We disagree.
When reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because this Court has the ultimate responsibility to determine the appropriate sanction. Florida Bar v. McFall, 863 So.2d 303, 307 (Fla.2003). In determining a proper sanction, the Court will take into consideration the three purposes of lawyer discipline:
First, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer as a result of undue harshness in imposing penalty. Second, the judgment must be fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation. Third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations.
Florida Bar v. Lord, 433 So.2d 983, 986 (Fla.1983) (emphasis omitted). As a general rule, when evaluating a referee's recommended discipline, the Court will not second-guess a referee's recommended discipline as long as that discipline (1) is authorized under the Florida Standards for Imposing Lawyer Sanctions ("the Standards") and (2) has a reasonable basis in existing case law. McFall, 863 So.2d at 307. As detailed more below, not only does the referee's recommended discipline of disbarment have a reasonable basis in the Standards and in existing case law, we find that any less severe discipline (including the long-term suspension suggested by Gross) is insufficient to fulfill the threefold purpose of attorney discipline.
As both parties recognize, disbarment is the presumed discipline for the misconduct which occurred in this case. In fact, Gross committed numerous acts of misconduct, most of which individually would be sufficient to justify disbarment, including the numerous client trust account misappropriations, the failure to defend a client in a lawsuit, the forgery of a judge's signature on certain orders, the forgery of a client's signature on a written plea of guilt, and the forgery of a client's signature on a check. See Fla. Stds. Imposing *746 Law. Sancs. 4.11 (stating disbarment is the presumed discipline when "a lawyer intentionally or knowingly converts client property regardless of injury"); 4.41(c) (stating disbarment is the presumed discipline when "a lawyer engages in a pattern of neglect with respect to client matters and causes serious... injury to a client"); 5.11(f) (stating disbarment is the presumed discipline when "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice"); 6.11 (stating disbarment is the presumed discipline when a lawyer "with the intent to deceive the court, knowingly makes a false statement or submits a false document").
Moreover, while it is difficult to find a case that compares to the amount of misconduct which occurred here, existing case law also supports disbarment. The misconduct at issue involved twelve separate counts relating to the misappropriation of client funds. Moreover, this misconduct continued to occur over a three-year period and involved over $100,000 of client funds. As this Court has recognized, "[D]isbarment is the appropriate sanction for misuse of client funds because it is unquestionably one of the most serious offenses a lawyer can commit." Florida Bar v. Massari, 832 So.2d 701, 706 (Fla.2002). Accordingly, "[t]he overwhelming majority of cases involving the misuse of client funds have resulted in disbarment despite the presence of mitigation." Florida Bar v. Barley, 831 So.2d 163, 171 (Fla.2002); see also Florida Bar v. Spears, 786 So.2d 516 (Fla.2001) (disbarment was warranted sanction for attorney who misappropriated client funds while under investigation for other similar misconduct); Florida Bar v. Travis, 765 So.2d 689, 691 (Fla.2000) (disbarment was warranted for deliberately misappropriating clients' funds over a substantial period of time and noting that "[t]he presumption of disbarment is exceptionally weighty when the attorney's misuse is intentional"); Florida Bar v. Fitzgerald, 541 So.2d 602, 606 (Fla.1989) (disbarment ordered where attorney misappropriated trust funds despite unrebutted evidence of attorney's rehabilitation). Although Gross presented substantial evidence of substance abuse and rehabilitation, this Court has disbarred attorneys who misappropriated funds despite evidence of substance abuse and rehabilitation, finding that the mitigating evidence at issue was insufficient to overcome the seriousness of the misconduct. See Florida Bar v. Prevatt, 609 So.2d 37 (Fla.1992) (disbarring attorney for use of client's funds as attorney's own and failure to repay the funds for over ten years despite evidence of alcoholism); Florida Bar v. Shuminer, 567 So.2d 430 (Fla.1990) (disbarring attorney for misappropriation of funds where addiction and other mitigating factors failed to outweigh seriousness of misappropriations); Florida Bar v. Golub, 550 So.2d 455 (Fla.1989) (disbarring attorney for misappropriating client funds despite mitigating evidence of alcoholism, which helped to explain the respondent's conduct, but did not excuse it); Florida Bar v. Rodriguez, 489 So.2d 726 (Fla.1986) (disbarring attorney for the conversion of client funds and admitted commingling of clients' moneys despite mitigating evidence relating to alcoholism and rehabilitation).
Additionally, this case also involves other conduct that is extremely troubling, including the forgery of a judge's signature on two orders, the forgery of a client's signature on a guilty plea, and the forgery of a client's signature on a check so Gross could deposit the funds of the check and use them for his own personal means. These acts alone can also constitute independent grounds for disbarment. See, e.g., Florida Bar v. Kickliter, 559 So.2d 1123, *747 1124 (Fla.1990) (holding that even with substantial mitigation, disbarment was warranted for an attorney who had forged his client's signature on a will when the client died without signing and then submitted this forged document into court).
Gross attempts to distinguish this Court's prior case law, contending that his level of addiction was worse than any of the above cases and that his mitigating circumstances require a result other than disbarment. We disagree. In fact, had it not been for this significant mitigation, Gross could have faced an even lengthier disbarment, up to and including permanent disbarment.[6] It is also clear that the referee found the mitigation significant enough to recommend that his disbarment be nunc pro tunc to the date that Gross was suspended, a recommendation with which we agree. In conclusion, the penalty of disbarment is supported by both case law and the Florida Standards for Imposing Lawyer Sanctions. As the referee's recommended discipline has a reasonable basis in both case law and the applicable standards, we approve the referee's recommendation that Gross be disbarred and required to pay the applicable costs of the proceeding.
In his final argument, Gross argues that the discipline of disbarment (as opposed to the discipline of suspension) violates the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2) (2000). Specifically, he contends that if he is disbarred, he will likely not be readmitted to the Bar, and this discipline permanently denies him the ability to practice law based on misconduct that was a proximate result of a disability for which he can be rehabilitated. We find this argument to be without merit. Gross does not argue that the ADA prohibits the Court from sanctioning an addict for his misconduct; instead, he argues that a five-year disbarment is too severe for his misconduct in light of the mitigating evidence relating to his addiction, i.e., that this Court should weigh his mitigating evidence more heavily. Contrary to Gross's suggestion, a five-year disbarment does not prevent Gross from ever practicing law again. Although a lawyer seeking readmission must show by clear and convincing evidence successful completion of the bar exam and rehabilitation and fitness to practice law, see Florida Bar v. Clement, 662 So.2d 690, 699 (Fla.1995),[7] this does not equate to a permanent prohibition from practicing law. See, e.g., Fla. Bd. of Bar Examiners re P.T.R., 662 So.2d 334 (Fla.1995) (disagreeing with the Board's recommendation to deny readmission and ordering the applicant's readmission). Moreover, this Court has already rejected this same type of argument in Florida Bar v. Clement, 662 So.2d 690, 699-700 (Fla.1995).

III. CONCLUSION
Accordingly, Lee Howard Gross is hereby disbarred from the practice of law in the State of Florida, effective, nunc pro tunc, May 21, 2002. Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Lee Howard Gross in the amount of $24,816.94, for which sum let execution issue.
It is so ordered.
*748 PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concurring.
NOTES
[1] Some of these rule violations were found numerous times across the various counts of misconduct.
[2] Gross did not enter rehabilitation until almost eleven months after the first complaint was filed. In fact, Gross entered into a rehabilitation contract with Florida Lawyers' Assistance, Inc., on May 20, 2002, the day before this Court suspended Gross from the practice of law.
[3] Gross does not contend that additional mitigation should have been found.
[4] Neither party contends that any specific aggravating factors should have been found.
[5] As an initial matter, Gross alleges that the referee's report provides insufficient findings of fact and analysis relating to the recommended discipline. We disagree and find that the report includes all the necessary items mandated by rule 3-7.6(k)(1).
[6] Since many of Gross's most troubling acts occurred after October 1998, permanent disbarment was also a potential sanction for the vast amount of misconduct which occurred. See In re Amendments to Rules Regulating The Florida Bar, 718 So.2d 1179, 1181 (Fla.1998) (amending rule 3-5.1(f) "to authorize permanent disbarment as a disciplinary sanction").
[7] See also R. Regulating Fla. Bar 3-5.1(f).