# THE SUPREME COURT OF IOWA

No. 22–2003

Submitted February 22, 2023—Filed March 31, 2023

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**SCOTT A. JOHNSON,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, a majority of the grievance commission recommends a three-year suspension for the attorney's violations of rules of professional conduct. **LICENSE SUSPENDED.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Tara van Brederode, Allison Schmidt, and Alexis Grove, Des Moines, for complainant.

Scott Johnson, Spencer, pro se.

**OXLEY, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint charging attorney Scott A. Johnson with nineteen violations of the Iowa Rules of Professional Conduct involving six different clients. The majority stemmed from neglect of cases and clients, but the most serious involved forgery and deception related to Johnson's representation of criminal defendants where he lied to the courts in furtherance of his own self-interests. The Board asks that this court find all the alleged violations established and suspend Johnson's license to practice law for three years. Upon our de novo review of the record, we are persuaded by the Board's position and suspend Johnson's law license.

**I. Background Facts and Proceedings.**

On April 27, 2022, the Board filed a five-count complaint with the Iowa Supreme Court Grievance Commission charging Johnson with violations of Iowa Rules of Professional Conduct 32:1.2(a), 32:1.3, 32:1.4(a)(2)–(3), 32:1.5(a), 32:3.2, 32:3.3(a)(1), 32:8.1(b), and 32:8.4(b)–(d). The Board alleges that Johnson "submit[ed] false time and expense claims to the Iowa State Public Defender's Office ('SPD'), neglect[ed] his legal matters, fail[ed] to communicate with his clients, fail[ed] to appear at hearings, fail[ed] to respond to the Board's pre-charge investigative inquiries, and forg[ed] a client's signature on a guilty plea."

Johnson was admitted to practice law in Iowa on September 18, 2015, and was practicing in Spencer at the time relevant to the Board's complaint. When the complaint was filed—less than eight years into Johnson's tenure as an Iowa attorney—Johnson had already received a private admonition and a public

reprimand, and his license was then under suspension for failure to comply with a client security commission audit of his lawyer trust account.[1]

Johnson's only response to the Board's complaint came on May 17 and 18, when he filed (and then amended) his answer. Johnson admitted almost all of the allegations against him but denied he had filed a guilty plea without his client's consent. After filing that answer and participating in a scheduling conference, "Johnson ceased all involvement in the proceedings," even failing to participate in discovery. (Emphasis omitted.) Accordingly, the Board successfully moved for sanctions pursuant to Iowa Rule of Civil Procedure 1.517(2)(*b*)(1), and as a consequence, the commission deemed admitted the allegation Johnson had previously denied (but not the ultimate conclusion as to whether that conduct did in fact violate the rules of professional conduct).

After a one-day hearing on July 27, a five-member division of the commission found all of the factual allegations in the complaint proven and unanimously concluded that those facts established the ethical violations charged. The commission members disagreed, however, as to the appropriate sanction. Three members recommend a three-year suspension, while two members recommend two years.

## II. Findings of Fact.

In attorney discipline cases, this court reviews "alleged violations and evidence de novo to ensure that the Board has proven each allegation of

---

[1]After that suspension was imposed on January 28, 2022, Johnson apparently took no corrective action. His license thus remains suspended as this case comes to us now.

misconduct by a convincing preponderance of the evidence." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Aeilts*, 974 N.W.2d 119, 125 (Iowa 2022). This is true even where the responding attorney admits the alleged conduct and the rule violations in the complaint. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 601 (Iowa 2012). "The convincing preponderance of the evidence standard is 'less demanding than proof beyond a reasonable doubt, but requires a greater showing than the preponderance of the evidence [standard].' " *Aeilts*, 974 N.W.2d at 125 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Adams*, 809 N.W.2d 543, 545 (Iowa 2012)).

That said, based on Johnson's admissions and the unresisted, unchallenged sanctions, "[f]or purposes of our de novo review, we deem [all of] the factual allegations contained in . . . the complaint admitted." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Moonen*, 706 N.W.2d 391, 396 (Iowa 2005). "Using these admissions of law and fact, together with our review of the record, we make the following findings of fact and determinations of [Johnson's] ethical violations." *Id.* at 397.

**A. Count I—*Brown* Representation.** In January 2018, Johnson was appointed to represent Allison Brown in a postconviction relief (PCR) proceeding she initiated in September 2016. Johnson's representation continued until he withdrew from the matter in January 2020. During this two-year representation, Johnson billed less than five total hours of work related to Brown's case, spoke with Brown over the phone roughly twice, and caused her PCR trial to be postponed at least twice. He requested (and the court granted) an application for

travel reimbursement related to a purported in-person visit with Brown at the Newton Correctional Facility and submitted a time and expense log claiming $166.14 for that purpose; however, he never actually met with Brown in person. In submitting his time and expense log to the SPD, Johnson certified "under penalty of law that . . . the statements and information contained in [his] submission [were] true, accurate, and complete."

Throughout the entire course of the representation, Brown appeared to be in the dark as to what Johnson was doing to advance her case. He did not inform Brown when the State moved to dismiss her petition or when he subsequently moved to amend the petition in response to the motion for summary dismissal. Brown complained to the court four times about Johnson's lack of communication—once in July 2018, twice in April 2019, and once in December 2019—requesting Johnson be removed as her attorney in her final two letters.

In the meantime, after the court denied the State's motion for summary dismissal, Johnson requested a continuance of the trial due to a scheduling conflict. The court granted the motion, directing Johnson and the State to coordinate with court administration within ten days to set a new trial date. Johnson never followed up, leaving the trial court to eventually set a new trial date in October 2019—thirteen months after it was previously set. Eight days prior to the new trial date (and nearly five months after the court had set that date), Johnson requested another continuance based on a scheduling conflict. After the court granted it, but before a new date could be set, Johnson moved to withdraw from his representation. He did not notify Brown that he was moving

to withdraw. In January 2020, the court granted Johnson's motion and appointed new counsel for Brown—four years out from the initiation of her PCR case.

**B. Count II—*Monson, Kreykes*, and *Peterson* Representations.** In March 2020, Johnson was appointed to represent Timothy Monson, a criminal defendant. After a pretrial conference in September, the district court believed a plea agreement had been reached and scheduled a plea hearing for later that month. From that time until May 2021, however, the court had to continue the plea hearing no less than nine times. Although some of those continuances stemmed from COVID-19 or other health concerns, some were at the behest of Johnson without any clear reason given, and another was simply due to Johnson's failure to obtain a signed guilty plea from the client or appear at the hearing. Indeed, both Johnson and Monson failed to appear for a plea hearing scheduled for February 22, 2021, when no guilty plea was yet on file, despite the court's earlier warning that if no plea was filed and Monson failed to appear, the court would issue a warrant for his arrest. Only after missing yet another plea deadline in April and receiving another warning from the court threatening to issue a warrant for Monson's arrest did Johnson finally obtain and file Monson's guilty plea.

This pattern of behavior carried over to Johnson's representation of Clinton Kreykes and Tracy Peterson—criminal defendants Johnson was appointed to represent in February 2021 in separate O'Brien County cases. Both Johnson and his clients failed to appear at pretrial conferences in their respective

cases—first on February 22 and again on March 8. Both sets of conferences were continued after Johnson and his clients were no-shows. Johnson gave the court no notice before missing the February 22 conferences and failed to respond to the court's attempts to contact him. He again gave the court no notice before missing the March 8 conferences, although he did email the prosecutor just prior to the conferences asking for a continuance due to a scheduling conflict. A third set of pretrial conferences was scheduled for April 5, and Peterson's April 13 trial date had to be postponed to June (although he ultimately ended up pleading guilty before trial). After finally appearing at these conferences, Kreykes's case proceeded to trial in April, ending in a guilty verdict. But when it came time for Kreykes's May 3 sentencing hearing, Johnson arrived too late for the hearing to proceed as scheduled, and he only requested a continuance after the hearing was supposed to have taken place.

**C. Count III—*Terwilliger* Representation.** Sometime between January and March 2021, Johnson agreed to represent Tiffany Terwilliger, the petitioner in a marriage dissolution proceeding. He filed his appearance on March 1, and the matter was set for trial on August 11. In the week leading up to trial, the court reporter emailed Johnson four times to assess the status of the case, but Johnson failed to respond to any of her emails. And when it came time for trial— despite his client showing up ready to proceed—Johnson was nowhere to be found. The district court judge called Johnson's cell phone and office phone numbers to no avail; his cell phone voicemail was not set up, and his office voicemail was full. The judge then emailed Johnson to inform him that his client

had waived his presence and that the trial would proceed, adding, "In my opinion, your failure to appear today, as well as your failure to respond to my court reporter's email of August 9, 2021, is unacceptable if not unethical behavior." The client's divorce was finalized without Johnson's assistance, and he never responded to the judge's email.

**D. Count IV—*Lowery* Representation.** From February through August 2020, Johnson represented Mandelo Lowery—a criminal defendant charged with two serious misdemeanors involving an assault and interference with official acts. The district court set a plea hearing in the matter for June after Johnson emailed the court stating that he had reached a plea agreement with the prosecutor. Johnson did not get Lowery's signature on the plea agreement prior to the hearing, however—or, indeed, prior to the next two dates to which the court rescheduled the hearing. After missing those deadlines, Johnson attempted to renegotiate the plea with the prosecutor, who stood firm on the initial agreement. Finally, on August 5, Johnson filed a written guilty plea purportedly signed by Lowery. The district court adjudicated Lowery guilty of the interference charge and dismissed the assault charge as provided by the agreement, imposing a suspended fine and a surcharge. As it was later revealed, however, Lowery did not in fact sign the plea agreement; Johnson had placed Lowery's signature from another court document onto the agreement without Lowery's knowledge or consent. When Lowery filed a PCR petition to have the conviction reversed, he was able to reach an agreement with the State in which

the State agreed to dismiss the criminal case and Lowery agreed to dismiss his PCR case.

**E. Count V—Failure to Respond.** Stemming from Johnson's conduct in the cases discussed above, the Board opened an investigation and sent Johnson notices (by certified mail) of the complaints against him on March 29 and March 31, 2021. Despite receiving the notices on April 7, Johnson did not respond until May 6. *See* Iowa Court R. 35.6(4) ("The respondent [to a complaint alleging attorney misconduct] must provide a written response [to the Board] within 20 days of receipt of the complaint."). The Board subsequently sent two requests for additional information, both of which went unanswered.

## III. Ethical Violations.

The Board charged Johnson with the following violations based on the above-described conduct. For the following reasons, we find all of the charged violations established by a convincing preponderance of the evidence.

**A. Rule 32:1.2(a).** Rule 32:1.2(a) provides, subject to principles discussed in later paragraphs, that "a lawyer shall abide by a client's decisions concerning the objectives of representation." Iowa R. of Prof'l Conduct 32:1.2(a). The rule elaborates that "[i]n a criminal case," this means "the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered." *Id.* We agree with the commission that Johnson violated this rule by placing Lowery's signature on a guilty plea without Lowery's knowledge or consent and submitting that forged plea to the court. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kallsen*, 814 N.W.2d 233, 238 (Iowa 2012) (finding "a flagrant violation" of rule

32:1.2(a) where an attorney forged a client's signature on a guilty plea over the client's express direction that he did not want to plead guilty).

**B. Rule 32:1.3.** Rule 32:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. of Prof'l Conduct 32:1.3. Although "a violation of rule 32:1.3 does not 'occur from one missed deadline,'" a violation does occur when a lawyer demonstrates a "consistent failure to perform those obligations that a lawyer has assumed[] or a conscious disregard for the responsibilities a lawyer owes to a client," such as when the attorney consistently "fails to appear at scheduled court proceedings, does not make the proper filings, or is slow to act on matters." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Noel*, 933 N.W.2d 190, 199 (Iowa 2019) (alteration in original) (first and second quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. West*, 901 N.W.2d 519, 524 (Iowa 2017); and third quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 537 (Iowa 2013)). "Often, this involves the 'lawyer doing little or nothing to advance the interests of [the] client after agreeing to represent the client.'" *Id.* (alteration in original) (quoting *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 552 (Iowa 2004)).

Johnson's conduct in representing Monson, Kreykes, Peterson, and Terwilliger sufficiently demonstrates the lack of diligence required to find a violation. Over the course of those four representations, Johnson repeatedly missed deadlines, failed to appear at scheduled hearings, and in Terwilliger's dissolution case, abandoned her at trial, failing to even respond to inquiries from

the court. When he missed deadlines, he consistently did so either without any advance notice or without explaining why he needed more time. In the three criminal cases, that conduct seriously jeopardized his clients' pretrial release; indeed, it appears that the only things that may have spared Kreykes from having a warrant issued for his arrest after failing to appear at the March 22 hearing were the prosecutor's hesitance to seek sanctions since she had received Johnson's last-minute email requesting a continuance and the court's concern that Kreykes was not personally notified of the consequences of failing to appear included in the order resetting the hearing where the order was served on Johnson but not copied to Kreykes. In *Iowa Supreme Court Attorney Disciplinary Board v. Adams*, we found a violation of rule 32:1.3 established when an attorney failed to comply with appellate deadlines, failed to file a written plea in advance of a client's arraignment, and then failed to appear at the arraignment itself. 749 N.W.2d 666, 669 (Iowa 2008). Johnson's neglect here was of a similar character, and it was much more pervasive—spanning over several months and multiple missed deadlines and hearings. The Board has established that Johnson violated rule 32:1.3.

**C. Rule 32:1.4(a)(2)–(3).** The Board charged Johnson with violations of rule 32:1.4(a)(2)–(3) in connection with his representations of Brown and Lowery. This rule dictates that lawyers must "reasonably consult with the[ir] client[s] about the means by which the client[s'] objectives are to be accomplished" and must "keep the[ir] client[s] reasonably informed about the status of the[ir] matter[s]." Iowa R. of Prof'l Conduct 32:1.4(a)(2)–(3). The facts here demonstrate

that not only did Johnson not *reasonably* consult with Brown or Lowery or *reasonably* keep them informed about their cases, he did not consult with them or keep them informed *at all.*

From Brown's perspective, Johnson had "apparently fallen off the face of the earth." Johnson spoke with Brown roughly twice during the entire two-year course of his representation and failed to inform her in advance of his decisions to add a claim to her petition and to withdraw from the case. And despite Brown's letters indicating that she was actively seeking to have her day in court as soon as possible, Johnson asked the court for a continuance and failed to follow up with court administration, resulting in the trial being pushed back over a year from when it was supposed to have taken place.

With respect to the Lowery representation, Lowery's PCR application asserts that he had "limited communication" with Johnson during the representation, that he specifically "instructed Scott Johnson that [he] would not take no deal," and that he was unaware the guilty plea had been filed. Johnson presented no contrary evidence. That he failed to apprise Lowery that the court had accepted the guilty plea is revealed by the fact that Lowery sought to expunge the underlying court record, which was denied based on the conviction entered on the interference charge. This forced Lowery to file the PCR action to challenge his conviction.

The Board has established Johnson's violations of rule 32:1.4(a)(2)–(3). *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 678 (Iowa 2010) ("Johnson's failure to respond to Neef's phone calls and requests for information,

failure to notify Neef of what progress had or had not been made on the case, and failure to provide notice of termination, contact information, return of paperwork, or a return of unearned fees violated rule[] 32:1.4 . . . .").

**D. Rule 32:1.5(a).** "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses, or violate any restrictions imposed by law." Iowa R. of Prof'l Conduct 32:1.5(a). Billing the SPD for time and travel expenses in connection with a visit to the Newton Correctional Facility that he never actually made violated this rule. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Noel*, 923 N.W.2d 575, 585–86 (Iowa 2019) ("Noel violated rule 32:1.5(a) by seeking fees [from the State Public Defender] for family team meetings he did not attend[,] . . . [and] by making false mileage claims."). It should go without saying that "[a] fee charged for services not provided is not reasonable." *Id.* at 586.

**E. Rule 32:3.2.** "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Iowa R. of Prof'l Conduct 32:3.2. In representing Brown, Monson, Kreykes, and Peterson, Johnson violated this rule by doing just the opposite. Rather than making efforts to expedite these cases, Johnson left them stalled for months on end and repeatedly sought to delay litigation solely (if he gave any reason at all) for his own convenience. For example, when Johnson did bother to request continuances for deadlines (as opposed to simply letting them pass or failing to appear at hearings), and when he bothered to explain his reason for the request, he often cited a nebulous "scheduling conflict." In Brown's case, for instance, Johnson

waited until eight days before trial to claim such a conflict despite having had Brown's trial date set five months in advance. "Although there will be occasions when a lawyer may properly seek a postponement for personal reasons, it is not proper for a lawyer to routinely fail to expedite litigation solely for the convenience of the advocates." Iowa R. of Prof'l Conduct 32:3.2 cmt. 1. Johnson's failure to move his clients' cases forward was sufficiently routine here for us to conclude by a convincing preponderance of the evidence that he violated this rule.

**F. Rule 32:3.3(a)(1).** "A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . ." Iowa R. of Prof'l Conduct 32:3.3(a)(1). In *Iowa Supreme Court Attorney Disciplinary Board v. Kallsen*, 814 N.W.2d at 238, we found an attorney had knowingly violated this rule by directing his client's fiancé to forge his client's signature on a guilty plea and then presenting that plea to the court with the representation that the client had signed it in his presence. Just as in that case, Johnson's conduct violated this rule. After inserting Lowery's signature on a guilty plea knowing that he did not have Lowery's consent to do so, Johnson passed it off to the prosecutor and the court as genuine. Further, Johnson did not act to correct the false statement of fact (i.e., that Lowery was pleading guilty); only when Lowery sought to expunge the criminal file did he learn of the forged signature, which required him to file a separate PCR petition and bring the forgery to the court's attention.

**G. Rule 32:8.1(b).** Under rule 32:8.1(b), "a lawyer [shall not,] in connection with . . . a disciplinary matter, . . . knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority . . . ." Iowa R. of Prof'l Conduct 32:8.1(b). "It is well established that a respondent's failure to respond to a notice of complaint from the Board is a violation of our rules." *McCarthy*, 814 N.W.2d at 609. Even when an attorney does eventually respond, if the response is nevertheless "not timely and required additional correspondence from the Board," this rule is violated. *Iowa Sup. Ct. Att'y Discipline Bd. v. Casey*, 761 N.W.2d 53, 60 (Iowa 2009) (per curiam); *see also Nelson*, 838 N.W.2d at 540 (finding violation where attorney took six months to respond to Board's notice); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 331 (Iowa 2009) (finding violation where attorney took three months to respond).

Here, although Johnson did file an answer to the notices of complaints the Board sent in March 2021, he did so nine days after the twenty-day window provided in Iowa Court Rule 35.6(4). We hold that, in combination with Johnson's subsequent failure to respond to the Board's requests for additional information, Johnson violated rule 32:8.1(b). *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Nelissen*, 871 N.W.2d 694, 700 (Iowa 2015) ("[W]e join the commission in determining that Nelissen violated rule 32:8.1(b) by ignoring requests of the Board for information. Between January and May 2014, the Board sent a series of letters to Nelissen, as to which it received no response."). We infer from the

fact that Johnson repeatedly failed to respond (either completely or in a timely fashion) that he did so "knowingly." *See id.*

**H. Rule 32:8.4(b).** "It is professional misconduct for a lawyer to," *inter alia*, "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. of Prof'l Conduct 32:8.4(b). "A lawyer need not be charged or convicted of a crime in order to be found in violation of this rule." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Cross*, 861 N.W.2d 211, 222 (Iowa 2015). Instead, in "assessing whether a lawyer has violated rule 32:8.4(b), we consider '[t]he nature and circumstances of the act,'" including: "the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct." *Aeilts*, 974 N.W.2d at 125 (alteration in original) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 40 (Iowa 2011)).

Forgery is a criminal act that reflects adversely on an attorney's honesty. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Barry*, 908 N.W.2d 217, 225–26 (Iowa 2018). The Board's complaint identifies Iowa Code section 715A.2(1) as evidence that Johnson's forging Lowery's signature on a guilty plea is a criminal act for purposes of rule 32:8.4(b). Under that provision,

> [a] person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that the person is facilitating a fraud or injury to be perpetrated by anyone, the person does any of the following:
>
>     *a.* Alters a writing of another without the other's permission.

*b.* Makes, completes, executes, authenticates, issues, or transfers a writing so that it purports to be the act of another who did not authorize that act, or so that it purports to have been executed at a time or place or in a numbered sequence other than was in fact the case, or so that it purports to be a copy of an original when no such original existed.

*c.* Utters a writing which the person knows to be forged in a manner specified in paragraph "*a*" or "*b*".

*d.* Possesses a writing which the person knows to be forged in a manner specified in paragraph "*a*" or "*b*".

Iowa Code § 715A.2(1) (2020).

In *Iowa Supreme Court Attorney Disciplinary Board v. Barry*, we found rule 32:8.4(b) violated where an attorney engaged in conduct "sufficient to show [he] committed forgery pursuant to section 715A.2 . . . [by] knowingly and intentionally creat[ing] a fraudulent dissolution decree and present[ing] it to [his clients] as an original decree signed by a judge without the judge's authority or knowledge." 908 N.W.2d at 225. To forge the judge's signature on the fake dissolution decree, the attorney obtained "a signature page from an order setting a hearing in an unrelated case bearing [a judge's] signature . . . [and] altered the case title and the case number on this signature page" to make it look like a judge had signed the divorce decree "[w]ithout [the judge's] knowledge or authorization." *Id.* at 223.

Johnson's actions in the course of representing Lowery are similar. Johnson obtained Lowery's signature from a different filing and electronically transferred it to the guilty plea to make it appear as though Lowery had signed the plea. He knew he did not have Lowery's authorization to do so but nevertheless placed Lowery's signature on the plea and passed it off to the court

as though Lowery himself had signed it. Lowery was directly harmed by this action: in addition to being convicted per the plea agreement, Lowery had to initiate a separate PCR claim in order to obtain relief from the judgment. This act "reflects adversely on [Johnson's] honesty, trustworthiness, and fitness as a lawyer, even if the authorities never charged him with the crime." *Id.* at 225–26; *see Iowa Sup. Ct. Att'y Disciplinary Bd. v. Stowe*, 830 N.W.2d 737, 743 (Iowa 2013) ("We have previously recognized the crime of forgery, by its very nature, reflects adversely on an attorney's fitness to practice law."). We conclude Johnson violated rule 32:8.4(b).

**I. Rule 32:8.4(c).** It is also professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. of Prof'l Conduct 32:8.4(c). "Forging a signature involves dishonesty, fraud, deceit, *and* misrepresentation," i.e., *everything* listed in the rule. *Barry*, 908 N.W.2d at 226 (emphasis added) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Thompson*, 732 N.W.2d 865, 867 (Iowa 2007)). Thus, we have no trouble concluding that Johnson violated this rule by forging Lowery's signature on the guilty plea.

The Board alleges that Johnson also violated this rule by submitting a false time and travel expense claim to the SPD in connection with his representation of Brown. To find a violation based on this conduct, we "must find 'a level of scienter that is more than negligent behavior or incompetence.' " *Noel*, 923 N.W.2d at 587 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Suarez-Quilty*, 912 N.W.2d 150, 158 (Iowa 2018)). "The dispositive question 'is whether the

effect of the lawyer's conduct is to mislead rather than to inform.'" *Id.* at 588 (quoting *Suarez-Quilty*, 912 N.W.2d at 158).

In *Iowa Supreme Court Attorney Disciplinary Board v. Noel*, we found this rule violated where an attorney submitted false time and travel expense claims to the SPD even though he claimed he only did so negligently or haphazardly. *Id.* In that case, there was a host of direct evidence showing that the attorney knew he had overbilled the SPD but still took no steps to correct the issue. *Id.* Although that level of direct evidence is missing here, Johnson simply admits that he violated this rule. Thus, the logical inference from this admission, together with the surrounding facts and circumstances, is that Johnson acted with the requisite level of scienter. Johnson knew he did not visit Brown in person, but he nevertheless billed the SPD for the trip; so when he certified that the information in his submission—including the claim that he traveled to visit with Brown—was "true, accurate, and complete," he knew that to be a false representation. *Cf. Iowa Sup. Ct. Att'y Disciplinary Bd. v. Marzen*, 949 N.W.2d 229, 239 (Iowa 2020) ("Marzen defends his actions as protecting [his clients'] best interests[,] . . . [but he] ignores that the [tax] returns [he filed] required a signature affirming the information contained in the returns was 'true, correct, and complete.'"). We therefore conclude that Johnson also violated rule 32:8.4(c) by submitting a false reimbursement claim to the SPD.

**J. Rule 32:8.4(d).** Finally, it is professional misconduct for an attorney to "engage in conduct that is prejudicial to the administration of justice." Iowa R. of Prof'l Conduct 32:8.4(d). "An attorney's conduct is prejudicial to the

administration of justice when it violates the 'well-understood norms and conventions of the practice of law' such that it hampers 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.' " *Aeilts*, 974 N.W.2d at 128 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 180 (Iowa 2013)); *see also Barry*, 908 N.W.2d at 226 ("[A] lawyer violates rule 32:8.4(d) when his or her misconduct wastes judicial resources." (citing *Iowa Sup. Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 463 (Iowa 2014))). "We have consistently held an attorney violates rule 32:8.4(d) when the 'misconduct results in additional court proceedings or causes court proceedings to be delayed or dismissed.' " *Noel*, 933 N.W.2d at 204 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Vandel*, 889 N.W.2d 659, 666 (Iowa 2017)).

We agree with the commission that Johnson violated this rule in his representations of Monson, Kreykes, Peterson, Terwilliger, and Lowery. In each of these cases, Johnson's repeated failure to meet deadlines and appear for scheduled hearings "undoubtedly delayed court proceedings" and "caused court personnel to invest time and energy" that they would not have otherwise. *Barry*, 908 N.W.2d at 226. In representing Terwilliger, for example, Johnson's failure to respond to the court reporter's emails caused the judge to delay starting the trial while she attempted to contact him, to no avail. And in representing Lowery, Johnson's submission of a forged guilty plea resulted in further litigation when Lowery later sought to have his conviction reversed.

Johnson also violated this rule by failing to respond to the Board's investigative inquiries as alleged in Count V. "A lawyer violates [rule 32:8.4(d)] when the lawyer fails to respond to inquiries from the Board." *McCarthy*, 814 N.W.2d at 610. Johnson failed to timely respond to the Board's notices, and he failed to respond at all to the Board's subsequent inquiries.

In summary, the Board proved by a convincing preponderance of the evidence all ethical violations charged in the complaint—Johnson engaged in nineteen violations of eleven different rules in matters involving six different clients as well as in his own disciplinary proceeding.

**IV. Sanctions.**

We must now decide on an appropriate sanction. Three members of the commission recommended a suspension of at least three years, while two members recommended two years, but the commission provided no explanation for the discrepancy. The Board initially suggested Johnson's actions were closest to those in *Iowa Supreme Court Attorney Disciplinary Board v. McCarthy*, where we imposed a two-year suspension, but it now supports the commission majority's recommendation. Johnson has not filed any statement with respect to sanctions.

In determining the appropriate sanction, we give the commission's findings and recommendations respectful consideration. *Aeilts*, 974 N.W.2d at 129. While we "are concerned with maintaining some degree of uniformity throughout our disciplinary cases," we do not let this concern override "the particular facts in each case [which ultimately] drive the resulting discipline." *Barry*, 908 N.W.2d

at 227 (alteration in original) (second quoting *Thompson,* 732 N.W.2d at 867). To that end, we begin our analysis by reviewing analogous cases. We also consider "the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the attorney's fitness to continue practicing law, as well as any aggravating or mitigating circumstances." *Aeilts,* 974 N.W.2d at 129 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Bartley,* 860 N.W.2d 331, 337 (Iowa 2015)).

**A. Review of Analogous Cases.** Forging another person's signature on a court document "is a 'grave and serious breach of professional ethics.' " *Kallsen,* 814 N.W.2d at 239 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Rickabaugh,* 728 N.W.2d 375, 382 (Iowa 2007)). As a self-regulated profession, an attorney's intentional misrepresentation to a court strikes at the baseline of fundamental honesty on which our profession's integrity is built. *See Rickabaugh,* 728 N.W.2d at 382 ("The whole structure of ethical standards is derived from the paramount need for lawyers to be trustworthy. The court system and the public we serve are damaged when our officers play fast and loose with the truth." (quoting *Comm. on Prof'l Ethics & Conduct of the Iowa State Bar Ass'n v. Bauerle,* 460 N.W.2d 452, 453 (Iowa 1990))).

Discipline in cases involving forgery has ranged anywhere from public admonition to revocation. *See Barry,* 908 N.W.2d at 227–28 (canvassing forgery cases). As those cases reveal, the level of discipline generally turns on the nature of the forged document, whether the violation was an isolated event or was coupled with prior or concurrent violations, the attorney's remorsefulness and

acceptance of responsibility for the actions, and the consequences to others from the attorney's dishonest acts.

For example, we imposed public reprimands on an attorney with no prior discipline who forged a judge's signature on an approved but unsigned order, *see Iowa Sup. Ct. Att'y Disciplinary Bd. v. Newman*, 748 N.W.2d 786, 787–89 (Iowa 2008), and another attorney with a clean record who forged a client's signature on an affidavit filed with the court, *see Comm. on Prof'l Ethics & Conduct of the Iowa State Bar Ass'n v. Roberts*, 312 N.W.2d 556, 557–58 (Iowa 1981) (en banc). But we have imposed two- and three-year suspensions in cases involving forgery coupled with additional violations that resulted in harm to others. *See, e.g.*, *McCarthy*, 814 N.W.2d at 610 (imposing a two-year suspension on attorney who "neglected the matters of multiple clients, made misrepresentations to his clients about the status of their cases to cover up his neglect, filed a court document containing a forged signature, failed to appear at court proceedings, and failed to comply with orders directing him to cure deficiencies"); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Van Beek*, 757 N.W.2d 639, 642, 644 (Iowa 2008) (concluding a two-year suspension for an attorney who "altered a will, forged the names of clients and executors to documents, falsely declared documents and signatures to be authentic, received attorney fees in an estate proceeding without a court order, failed to deposit unearned fees into her trust account, [and] neglected client matters" was appropriate considering "the multiple instances of serious misconduct and properly consider[ed] Van Beek's struggle with depression and alcoholism that contributed to her misconduct");

*Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Hansel*, 558 N.W.2d 186, 192 (Iowa 1997) (imposing a three-year suspension for conduct that included knowledge of a forged endorsement on a client's money order that was deposited in the attorney's personal account); *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Clauss*, 530 N.W.2d 453, 454–55 (Iowa 1995) (imposing a three-year suspension on a lawyer with a past disciplinary record who, among other violations, forged and falsely notarized his wife's signature on a return of service for an original notice). We revoked one attorney's license for a number of violations, including forging an executor's signature on a report and inventory and filing it with the court when the executor refused to sign the inventory because it was incorrect. *Rickabaugh*, 728 N.W.2d at 378, 382. In that case, William Rickabaugh's Iowa law license had previously been suspended for three years based on "very serious ethical misconduct, most notably the fabrication of documents and the forgery of a judge's signature in an attempt to persuade a client he had filed a lawsuit and obtained a judgment." *Id.* When it came to light that he had also forged the executor's signature in addition to his forgery of a judge's signature, we concluded revocation was warranted because his "pattern of deceit reveal[ed] a serious character flaw which makes him unfit to practice law." *Id.*

We have imposed one-year suspensions in two other cases involving forgery of a client's signature specifically related to a guilty plea. In *Kallsen*, we suspended an attorney's license for one year when the attorney instructed his client's fiancé to forge his client's signature on a guilty plea to an OWI (first offense) charge. 814 N.W.2d at 237, 240. The resulting sentence required the

client to spend a week in jail, and the client had to initiate a PCR suit to have the plea and conviction set aside. *Id.* at 237. The consequence to Kallsen's client of spending seven days in jail weighed heavily in our suspension but was mitigated by Kallsen's decisions to refund the client's fee and to voluntarily cease practicing law. *Id.* at 240.

Kieffer-Garrison also received a one-year suspension for forging her client's signature on a written arraignment and *not*-guilty plea form when she was unable to obtain her client's signature. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kieffer-Garrison*, 951 N.W.2d 29, 33–35 (Iowa 2020). After unsuccessfully attempting to contact her client by mail to obtain his signature on the form, Kieffer-Garrison took it upon herself to sign the client's name and submit it to the court as though her client had signed it. *Id.* at 34. After the client informed the court of the discrepancy and the court confronted Kieffer-Garrison, she doubled down—"falsely t[elling] the court that she received [the client's] written arraignment form in the mail with what she believed was [his] signature and filed it." *Id.* at 34–35. We compared Kieffer-Garrison's case to *Kallsen*: although "the consequences of [Kieffer-Garrison's] misconduct on her client were not as severe as the seven-day jail sentence that the client suffered in *Kallsen*," we found "the circumstances in [Kieffer-Garrison's] case [were] still just as troubling" in light of Kieffer-Garrison's lengthier history of misconduct that also involved dishonesty. *Id.* at 39.

In cases "[w]hen multiple instances of neglect are involved and combine with other violations or cause significant harm to the clients, we have imposed a

longer period of suspension"—in some cases, ranging between two and three years. *Johnson*, 792 N.W.2d at 682 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 270 (Iowa 2010)) (collecting cases). Finally, "our sanctions for attorneys who charge and collect unreasonable fees range from sixty days to two years." *Noel*, 923 N.W.2d at 588–89.

**B. Aggravating and Mitigating Factors.** Johnson has not presented any mitigating factors, and we are hard-pressed to find any on the record. *See Johnson*, 792 N.W.2d at 682–83 (considering no mitigating factors where attorney presented none by failing to "respond[] in any way to the board"). Despite the Board's assertion that there are none, the commission found it relevant that Johnson admitted wrongdoing by stipulating to all of the facts and violations in the complaint save for those regarding Lowery's guilty plea.

Although "an attorney's acceptance or acknowledgment of some wrongdoing constitutes a mitigating circumstance," *Barry*, 908 N.W.2d at 231, failure to cooperate with the Board's investigation is an aggravating factor, *see Comm. on Prof'l Ethics & Conduct of the Iowa State Bar Ass'n v. Wenger*, 469 N.W.2d 678, 680 (Iowa 1991) (en banc). On balance, then, we find Johnson's admission to most—but not the most serious—of the alleged violations and conduct to be of little, if any, mitigating value. The mitigating value in accepting or acknowledging wrongdoing typically comes from the concomitant acceptance of *responsibility* for that wrongdoing. *See Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Lyzenga*, 619 N.W.2d 327, 329, 331–32 (Iowa 2000) (en banc) (agreeing with the sentiment of the commission, which found that despite

attorney's acknowledgment of wrongdoing, she "had not acknowledged personal *responsibility* for her" actions (emphasis added)). Simply acknowledging that one broke a rule without making any effort to own up to it—for example, by making efforts to set things right, *see, e.g., Noel,* 923 N.W.2d at 590–91; *Kallsen,* 814 N.W.2d at 240, by participating in the administration of justice, or by even simply showing some level of remorse, *see, e.g., Barry* 908 N.W.2d at 231—is as likely to reflect a flagrant disregard for the authority behind that rule as it is to show an acceptance of responsibility, *see Kieffer-Garrison,* 951 N.W.2d at 35, 40 (considering attorney's actions of entering into stipulation of facts together with her lack of "remorse for [her] misconduct" as an aggravating factor); *Lyzenga,* 619 N.W.2d at 333 ("Also disturbing to us is Lyzenga's apparent disinterest in these proceedings. . . . This lack of interest not only mocks the disciplinary process but casts serious doubt on her true commitment and dedication to rectify her past conduct and adhere to the highest standards of professional conduct in the future.").

Indeed, as the commission noted, Johnson's wholesale failure to participate in these proceedings "casts serious doubt on any commitment to a future practice of law." The commission's sentiments are bolstered by the fact that at the time this complaint was filed, Johnson's law license had already been under suspension for three months for his failure to comply with a client security commission audit of his lawyer trust account. *See* Iowa Ct. R. 39.10(3). There is no indication in the record that Johnson ever made an attempt to comply with the obligations that suspension imposed or otherwise sought to lift it. *See id.*

r. 39.8(3) (providing fifteen- and thirty-day windows for compliance with certain obligations as conditions precedent to an application for readmission). Simply put—aside from his brief answer to the complaint and appearance at the scheduling conference in this matter (ten months ago)—we are left with the impression, like one of Johnson's former clients, that Johnson has "apparently fallen off the face of the earth."[2]

Johnson's current violations and his suspension related to the audit of his trust fund are not the only instances of discipline in his relatively short tenure as an Iowa attorney. In 2019, Johnson received a public reprimand for failing to act diligently in representing a client pursuing a PCR appeal, causing the client's appeal to be dismissed. And even that was "not [his] first time neglecting an appeal," as shown by the private reprimand he received earlier that same year. This prior history of discipline—particularly Johnson's prior history of failing to act diligently in representing appointed clients—is a significant aggravating factor. *See Johnson,* 792 N.W.2d at 682 (noting, in disciplinary case three years after attorney's admission to practice law in Iowa, his having "demonstrated in a short period of time a pattern of repeated callousness and indifference to his client[s'] matters"); *see also Kieffer-Garrison,* 951 N.W.2d at 40 ("We consider [an attorney's] pattern of misconduct, multiple rules violations, and history of disciplinary action as aggravating factors."); *Marzen,* 949 N.W.2d at 244 ("If the

---

[2]In January 2023, this court sent Johnson a copy, by regular mail, of our order setting his case for nonoral submission in February. On January 25, that letter was marked as undeliverable and, as the post office was unable to forward it to another address, it was returned to us.

prior disciplinary action was based on the same or similar conduct, '[t]his factor is even stronger.' " (alteration in original) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Goedken*, 939 N.W.2d 97, 108 (Iowa 2020))).

"We [also] consider harm to the client as an aggravating factor." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 154 (Iowa 2018). Although the harm to Lowery was not as great as the harm suffered by the client in *Kallsen*—who had to spend a week in jail as a result of the attorney's forgery— we still find Lowery was harmed by the fact that he was required to expend further time and expense in litigation to have his conviction reversed.

Finally, the nature of Johnson's violations—particularly in forging his client's signature on a guilty plea—and their scope—involving six different clients—are themselves aggravating factors. *See Aeilts*, 974 N.W.2d at 132 ("The nature of [an attorney's] violations is also an aggravating factor."); *Barry*, 908 N.W.2d at 233 ("We emphasize '[w]hat should dictate the sanction in this case is the nature, number, and seriousness of the ethical violations[.]' " (alterations in original) (quoting *Hansel*, 558 N.W.2d at 192)). "[F]undamental honesty is the base line and mandatory requirement to serve in the legal profession," and Johnson's "forgery of [his client's] signature constitute[s] [a] serious breach[] of th[at] fundamental concept[]." *Barry*, 908 N.W.2d at 233 (quoting *Bauerle*, 460 N.W.2d at 453). Where attorneys "blatant[ly] disregard [this] duty," there is "no place for [them]" in the legal profession. *Rickabaugh*, 728 N.W.2d at 382 (second quoting *Wenger*, 469 N.W.2d at 679). Absent

mitigating factors, other jurisdictions have imposed disbarment in cases involving intentional forgery.[3]

It is particularly troubling that Johnson forged a plea of guilty—even after his client told him he would not sign. The client is the master of his own fate, and an attorney who cannot be troubled to seek or follow the client's direction should not be practicing law. Attorneys are granted substantial latitude in deciding how to best prosecute or defend a case on their client's behalf, *see* 16 Gregory C. Sisk & Mark S. Cady, *Iowa Practice Series: Lawyer and Judicial Ethics* § 5:2(b) author's cmt., at 164–65 (2022 ed., 2022), but certain decisions are always retained by the client. In criminal cases that list is fairly short, and

---

[3]*See, e.g.*, *The Fla. Bar v. Gross*, 896 So. 2d 742, 745–47 (Fla. 2005) (per curiam) (disbarring attorney for several egregious acts of misconduct but noting that some of those acts would have been independently sufficient to warrant disbarment, including "the forgery of a client's signature on a written plea of guilt"); *People v. Marmon*, 903 P.2d 651, 652 (Colo. 1995) (en banc) (per curiam) (disbarring attorney who "forged three court documents to conceal his neglect of an adoption case"); *Att'y Grievance Comm'n of Md. v. Barnett*, 102 A.3d 310, 320–21 (Md. 2014) (disbarring attorney who "forged [a client's] signature on an Affidavit of Indigency[,] . . . submitted the false document to the circuit court[,] . . . failed to notify [the client] of [court] dates, or otherwise communicate with her for at least ten months," withdrew the client's court filings without her consent, and during the subsequent investigation, "intentionally misled Bar Counsel"), *abrogated by Att'y Grievance Comm'n of Md. v. Collins*, 270 A.3d 917, 945–46 (Md. 2022) (recognizing that seminal Maryland case, *Att'y Grievance Comm'n of Md. v. Vanderlinde*, 773 A.2d 463, 488 (Md. 2001), relied on by *Barnett* court and others for the proposition that disbarment should ordinarily be the sanction for misconduct involving intentional dishonesty was not consistently followed in all cases and therefore "no longer exclusively sets the standard for imposition of the sanction in cases involving intentional dishonesty," rather, "cases involving dishonesty and knowingly made false statements will be assessed on an individual basis to determine whether the misconduct at issue gives rise to deployment of the standard set forth in Vanderlinde"); *In re Disciplinary Proceeding Against Guarnero*, 93 P.3d 166, 168–70, 173 (Wash. 2004) (en banc) (affirming disciplinary hearing officer's determination that disbarment was warranted for attorney's forging a client's signature on a declaration and passing it off as genuine to the court and opposing counsel). *But see In re Disciplinary Action Against Aitken*, 787 N.W.2d 152, 155–56, 162–64 (Minn. 2010) (per curiam) (imposing ninety-day suspension and two-year probationary period where attorney forged a client's signature on a guilty plea and failed to cooperate with the subsequent disciplinary investigation); *In re Disciplinary Action Against Stensland*, 799 N.W.2d 341, 343, 348 (N.D. 2011) (per curiam) (imposing one-year suspension, restitution, and court costs on attorney for misconduct, including forging client's signature on a guilty plea).

whether to plead guilty is right at the top. *See* Iowa R. of Prof'l Conduct 32:1.2(a) ("[T]he lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, and whether the client will testify."). Even in the absence of rule 32:1.2(a)'s explicit direction, an attorney's fundamental duty to act scrupulously and in his client's stated interests is at its zenith when his client's liberty is at stake, as it is during the plea-bargaining process. We have recently reiterated the United States Supreme Court's declaration "that plea-bargaining '*is* the criminal justice system.'" *State v. Patten*, 981 N.W.2d 126, 127–28 (Iowa 2022) (quoting *Sothman v. State*, 967 N.W.2d 512, 540 (Iowa 2021) (McDermott, J., dissenting)). That process— and thus, by extension, the criminal justice system—cannot function if attorneys cannot be trusted to faithfully represent their clients' interests.[4] *See Missouri v. Frye*, 566 U.S. 134, 144 (2012) ("In order that [the] benefits [of plea bargaining] can be realized, however, criminal defendants require effective counsel during plea negotiations.").

**C. Appropriate Sanction.** Unlike the attorneys in *Kieffer-Garrison* and *Kallsen*, Johnson's misconduct ranged across six different representations, involved an extensive pattern of client neglect—which itself was a continuation

---

[4]During the COVID-19 pandemic, we extended the availability of written guilty pleas to class "D" felonies. *See* Iowa Sup. Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* 2–3 (Apr. 17, 2020). That practice will soon become permanent for nonforcible class "D" felonies. *See* Iowa Sup. Ct. Supervisory Order, *In the Matter of Adopting Revised Chapter 2 Iowa Rules of Criminal Procedure* (Oct. 14, 2022), proposed rule 2.8(4). If we are going to allow criminal defendants to use a written guilty plea for more serious crimes subjecting them to significant jailtime, we must be able to trust that attorneys are doing their utmost to protect their clients' interests.

of his prior history of discipline—and included dishonesty not only in forging Lowery's guilty plea but also in submitting a false time and expense claim to the SPD. Thus, we agree with the Board that a one-year suspension would be inadequate and that a suspension within the two-to-three-year range is more appropriate. *See, e.g., McCarthy*, 814 N.W.2d at 610–11 (imposing a two-year suspension for a variety of misconduct, including filing a forged document); *Rickabaugh*, 728 N.W.2d at 378, 382 (revoking attorney's license for forging and filing a probate matter after having previously suspending the same attorney's license for three years for forging a judge's signature to convince a client he had received a judgment he had not).

As we noted above, the level of discipline in cases involving forgery generally turns on the nature and circumstances of the forgery, whether the violation was an isolated event or was coupled with prior or concurrent violations, the attorney's remorsefulness and acceptance of responsibility for the actions, and the consequences to others from the attorney's dishonest acts. Here, Johnson's forgery of Lowery's guilty plea is accompanied by a litany of other violations, including him billing the SPD for services not rendered, to say nothing of his prior disciplinary history. He has expressed no remorse for his actions and although he admitted most of the violations in the complaint, he denied having forged Lowery's signature on the guilty plea and then stopped cooperating in the disciplinary process or otherwise explaining his actions. Finally, although Lowery did not spend any time in jail as a result of the forged guilty plea (unlike the client in *Kallsen*), he was still required to initiate a PCR petition and engage

in further litigation with the State in order to undo Johnson's forgery. In other words, the court was not able to simply hit the reset button as it did in *Kieffer-Garrison.* And Johnson's five other clients were subject to, at a minimum, protracted litigation as a result of his dilatory practices.

Given the lack of mitigating factors in this case, the nature and scope of Johnson's violations, and the troubling pattern of callous disregard Johnson has displayed for his clients and the profession, we agree with the majority in the commission that a lengthy suspension of at least three years is warranted. "More than anything, [Johnson's] obvious indifferent attitude toward our disciplinary system and basic professional norms . . . weigh[s] heavily in the sanctions scale." *Kieffer-Garrison*, 951 N.W.2d at 40 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Parrish*, 925 N.W.2d 163, 182 (Iowa 2019)). In this case, that weight overbears "[a]ny inclination on our part to temper the sanction imposed." *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Palmer*, 563 N.W.2d 634, 635 (Iowa 1997) (per curiam).

**V. Conclusion.**

We hereby suspend Johnson's license to practice law in Iowa indefinitely, with no possibility of reinstatement for three years from the date of this opinion. This suspension applies to all facets of the practice of law. Iowa Ct. R. 34.23(3). We further direct Johnson to comply with the requirements set forth in Iowa Court Rule 34.24 and assess the costs of the instant disciplinary action to him, *see* Iowa Ct. R. 36.24(1).

**LICENSE SUSPENDED.**